KEN MCDOWELL and JOSEPH COLLORA, individually and on behalf of all others similarly situated,

                        Plaintiffs,

     v.

MCDONALD'S CORPORATION,

                        Defendant.

Civil Action No. 1:22-cv-01688

Judge: Franklin U. Valderrama
Magistrate Judge: Young B. Kim

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

L. Timothy Fisher
Sean L. Litteral
Elvia M. Lopez
**BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
     slitteral@bursor.com
     elopez@bursor.com

Joshua D. Arisohn
Alec M. Leslie
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jarisohn@bursor.com
     aleslie@bursor.com

Carl V. Malmstrom
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
111 W. Jackson St., Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Facsimile: (212) 686-0114
Email: malmstrom@whafh.com

Jonathan Shub
Kevin Laukaitis
**SHUB LAW FIRM LLC**
134 Kings Hwy E., 2nd Fl.
Haddonfield, NJ 08033
Telephone: (856) 772-7200
Facsimile: (856) 210-9088
Email: jshub@shublawyers.com
     klaukaitis@shublawyers.com

[Additional Counsel On Signature Block]

# TABLE OF CONTENTS

**PAGE(S)**

I. INTRODUCTION ...................................................................................................... 1

II. ARGUMENT ............................................................................................................. 1

    A.     Plaintiffs Sufficiently Allege Article III Standing ...................................... 1

        1.     Defendant's Arguments Against Standing Do Not Disturb
               Binding Seventh Circuit Precedent ................................................ 4

        2.     Plaintiffs Sufficiently Allege a Particularized Injury ................... 6

        3.     Plaintiffs' Allegations of Harm Are Plausible ............................. 8

               a.     Defendant provides no good reason to cast aside well-
                       pleaded allegations concerning the specific PFAS
                       identified ........................................................................... 8

               b.     Defendant mischaracterizes cited sources to fabricate
                       a standing issue .............................................................. 9

    B.     For All Relevant Claims, Plaintiffs' Allegations Satisfy Rule 9(b) ......... 13

        1.     Plaintiffs' Allegations Are Analogous to Those Courts Have
               Found Sufficient Under 9(b) ........................................................ 13

        2.     Rule 9(b) Does Not and Can Not Require the Adjudication of
               Factual Challenges Defendant Seeks at This Stage ..................... 14

        3.     Plaintiffs Sufficiently Allege Reliance (Though Not All
               Claims Require Reliance) ............................................................ 16

    C.     Plaintiffs State Actionable Claims Based on Affirmative
        Misrepresentations, As Well As Omissions That Defendant
        Overlooks ................................................................................................. 18

    D.     Defendant Fails to Meet Its Burden to Show Preemption ....................... 21

        1.     Defendant Does Not Overcome the Strong Presumption of
               Non-Preemption ......................................................................... 21

        2.     Even if the Court Considered Defendant's Extrinsic
               Evidence, Defendant Does Not Make a Sufficient Showing as
               to Each PFAS .............................................................................. 23

        3.     Defendant Identifies No Conflict with Federal Law and
               Policy ......................................................................................... 24

        4.     Defendant's Cursory Express Preemption Challenge Fails ......... 26

        5.     The Safe Harbor Doctrine is Inapplicable ................................... 27

6. The Primary Jurisdiction Doctrine Should Not Be Applied ........................ 28

E. Plaintiffs' Remaining Claims Should Survive ......................................... 29

III. CONCLUSION ............................................................................. 30

# TABLE OF AUTHORITIES

## CASES

*Am. Home Prod. Corp. v. Johnson & Johnson*,
   672 F. Supp. 135 (S.D.N.Y. 1987) ........................................................... 28

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011) .................................................................... 12

*Andrade-Heymsfield v. NextFoods, Inc.*,
   2022 WL 1772262 (S.D. Cal. Apr. 27, 2022) ......................................... 30

*Andrews v. Procter & Gamble Company*,
   2019 WL 6520045 (C.D. Cal. June 3, 2019) .......................................... 13

*Askin v. Quaker Oats Co.*,
   818 F. Supp. 2d 1081 (N.D. Ill. 2011) ..................................................... 5

*Aux Sable Liquid Prod. v. Murphy*,
   526 F.3d 1028 (7th Cir. 2008) .......................................................... 21, 22

*Backus v. Nestle USA, Inc.*,
   167 F. Supp. 3d 1068 (N.D. Cal. 2016) .................................................. 25

*Barnes v. Unilever United States Inc.*,
   2022 WL 2915629 (N.D. Ill. July 24, 2022) .................................... 3, 4, 6

*Barton v. Pret A Manger (USA) Ltd.*,
   535 F. Supp. 3d 225 (S.D.N.Y. 2021) .................................................... 14

*Bates v. Dow Agrosciences LLC*,
   544 U.S. 431 (2005) ................................................................................ 24

*Bell v. Publix Super Markets, Inc.*,
   982 F.3d 468 (7th Cir. 2020) .................................................................. 27

*Berke v. Whole Foods Mkt., Inc.*,
   2020 WL 5802370 (C.D. Cal. Sept. 18, 2020) ......................................... 6

*Bruton v. Gerber Prod. Co.*,
   703 F. App'x 468 (9th Cir. 2017) ........................................................... 20

*Bush v. Ancient Brands, LLC*,
   2021 WL 5232687 (N.D.N.Y. Nov. 10, 2021) ........................................ 16

*Calhoun v. Google LLC*,
   526 F. Supp. 3d 605 (N.D. Cal. 2021) .................................................... 13

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ................................................ 17, 18

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ............................................................. 28

*Chavez v. Blue Sky Nat. Beverage Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010) ............................................. 22

*Cheslow v. Ghirardelli Chocolate Co.*,
    445 F. Supp. 3d 8 (N.D. Cal. 2020) ..................................... 20, 21

*Choi v. Kimberly-Clark Worldwide, Inc.*,
    2019 WL 4894120 (C.D. Cal. Aug. 28, 2019) .......................... 30

*Cipollone v. Liggett Grp. Inc.*,
    505 U.S. 504 (1992) ................................................................. 24

*City of Pomona v. SMQ N. Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2014) ................................................. 11

*Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*,
    770 F.3d 586 (7th Cir. 2014) ..................................................... 2

*Cytyc Corp. v. Neuromedical Sys., Inc.*,
    12 F. Supp. 2d 296 (S.D.N.Y. 1998) ........................................ 28

*Dawood v. Gamer Advantage LLC*,
    2022 WL 3108846 (E.D. Cal. Aug. 4, 2022) ..................... passim

*Diedrich v. Ocwen Loan Servicing, LLC*,
    839 F.3d 583 (7th Cir. 2016) ..................................................... 8

*Dinan v. SanDisk LLC*,
    2020 WL 364277 (N.D. Cal. Jan. 22, 2020) ........................ 27, 28

*Doss v. Gen. Mills, Inc.*,
    2019 WL 7946028 (S.D. Fla. June 14, 2019) ............................. 7

*Ehlrich v. BMW of N.Am., LLC*,
    801 F. Supp. 2d 9088 (C.D. Cal. 2010 .................................... 17

*Fed. Election Comm'n v. Cruz*,
    142 S. Ct. 1638 (2022) ............................................................... 3

*Fine v. ConAgra Foods, Inc.*,
    2010 WL 11595914 (C.D. Cal. June 29, 2010) ........................ 14

*Florida Lime & Avocado Growers v. Paul*,
    373 U.S. 132 (1963) ................................................................. 22

*Friedman v. AARP, Inc.*,
　855 F.3d 10476 (9th Cir. 2017 ......................................................................... 17

*G & S Holdings LLC v. Cont'l Cas. Co.*,
　697 F.3d 534 (7th Cir. 2012) ............................................................................. 4

*Gate Techs., LLC v. Delphix Capital Mkts., LLC*,
　2013 WL 3455484 (S.D.N.Y. July 9, 2013) .................................................... 30

*Geier v. Am. Honda Motor Co.*,
　529 U.S. 861 (2000) ........................................................................................ 27

*Graham v. Bank of Am., N.A.*,
　226 Cal. App. 4th 594 (2014) ......................................................................... 18

*Hauter v. Zogarts*,
　14 Cal. 3d 104 (1975) ..................................................................................... 20

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*,
　2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ................................................... 5

*Hughes v. Chattem, Inc.*,
　818 F. Supp. 2d 1112 (S.D. Ind. 2011) ............................................................ 5

*Illinois Bell Tel. Co. v. Glob. NAPs Illinois, Inc.*,
　551 F.3d 587 (7th Cir. 2008) ........................................................................... 28

*In re Aqua Dots Prod. Liab. Litig.*,
　654 F.3d 748 (7th Cir. 2011) ..................................................................... 2, 4, 5

*In re Argon Credit LLC*,
　632 B.R. 300 (Bankr. N.D. Ill. 2021) .............................................................. 17

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*,
　2009 WL 3762965 (W.D. Mo. Nov. 9, 2009) .............................................. 26, 27

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*,
　903 F.3d 278 (3d Cir. 2018) .............................................................................. 5

*Jones v. ConAgra Foods, Inc.*,
　912 F. Supp. 2d 889 (N.D. Cal. 2012) ............................................................ 29

*Kanan v. Thinx Inc.*,
　2021 WL 4464200 (C.D. Cal. June 23, 2021) ................................................... 9

*Kimca v. Sprout Foods, Inc.*,
　2022 WL 1213488 (D.N.J. Apr. 25, 2022) ........................................................ 6

*Kosta v. Del Monte Corp.*,
　2013 WL 2147413 (N.D. Cal. May 15, 2013) .................................................. 22

*Lavoie-Fern v. Hershey Co.*,
   2022 WL 2671856 (M.D. Pa. July 11, 2022)............................................. 23, 26

*Leslie v. Medline Indus., Inc.*,
   2021 WL 4477923 (N.D. Ill. Sept. 30, 2021) .............................................. 2

*Lipton v. Chattem, Inc.*,
   2012 WL 1192083 (N.D. Ill. Apr. 10, 2012) ............................................... 5

*Mancuso v. RFA Brands, LLC*,
   454 F. Supp. 3d 197 (W.D.N.Y. 2020) ........................................................ 6

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996)..................................................................................... 23

*Mier v. CVS Pharmacy, Inc.*,
   2021 WL 1559367 (C.D. Cal. Mar. 22, 2021)........................................ 20, 25

*Mirza v. Ignite USA, LLC*,
   439 F. Supp. 3d 1058 (N.D. Ill. 2020) ...................................................... 29

*Moyer v. Michaels Stores, Inc.*,
   2014 WL 3511500 (N.D. Ill. July 14, 2014).............................................. 5

*Muir v. Playtex Prod., LLC*,
   983 F. Supp. 2d 980 (N.D. Ill. 2013) ....................................................... 5

*Nachampassack v. Illinois State Toll Highway Auth.*,
   2022 WL 952356 (N.D. Ill. Mar. 30, 2022)............................................ 23

*Patriotic Veterans, Inc. v. Indiana*,
   736 F.3d 1041 (7th Cir. 2013) .............................................................. 21, 22

*Pels v. Keurig Dr. Pepper, Inc.*,
   2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ............................................ 6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) ................................................................... 13

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
   2 F.4th 1002 (7th Cir. 2021) .................................................................. 6

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
   2020 WL 1245130 (N.D. Cal. Mar. 16, 2020).......................................... 7

*Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*,
   745 F.3d 343 (9th Cir. 2014) .................................................................. 28

*Ryan v. Chemlawn Corp.*,
   935 F.2d 129 (7th Cir. 1991) ............................................................... 28, 29

*Sabo v. Wellpet, LLC*,
  250 F. Supp. 3d 332 (N.D. Ill. 2017) ................................................... 5

*Schiesser v. Ford Motor Co.*,
  No. 16 C 730, 2017 WL 1283499 (N.D. Ill. Apr. 6, 2017) ..................... 17

*Schloegel v. Edgewell Pers. Care Co.*,
  2022 WL 808694 (W.D. Mo. Mar. 16, 2022) ........................................ 7

*Sciortino v. Pepsico, Inc.*,
  108 F. Supp. 3d 780 (N.D. Cal. 2015) ............................................. 9, 26

*Shin v. ICON Found.*,
  2021 WL 6117508 (N.D. Cal. Dec. 27, 2021) ...................................... 30

*Silha v. ACT, Inc.*,
  807 F.3d 169 (7th Cir. 2015) ............................................................. 2

*Sprint Spectrum Realty Co., LLC v. Hartkopf*,
  2019 WL 6251251 (N.D. Cal. Nov. 22, 2019) ...................................... 18

*Suchanek v. Sturm Foods, Inc.*,
  2018 WL 6617106 (S.D. Ill. July 3, 2018) ..................................... 16, 17

*United States v. Berkowitz*,
  927 F.2d 1376 (7th Cir. 1991) ........................................................... 9

*United States v. Funds in the Amount of $239,400*,
  795 F.3d 639 (7th Cir. 2015) ............................................................. 2

*Virginia Uranium, Inc. v. Warren*,
  139 S. Ct. 1894 (2019) ................................................................ 22, 25

*Wagner v. Gen. Nutrition Corp.*,
  2017 WL 3070772 (N.D. Ill. July 19, 2017) ................................... 13, 15

*Waldo v. Eli Lilly & Co.*,
  2014 WL 130545 (E.D. Cal. Jan. 14, 2014) ........................................ 14

*Willard v. Tropicana Mfg. Co., Inc.*,
  577 F. Supp. 3d 814 (N.D. Ill. 2021) .................................................. 2

*Williams v. Coca Cola Co.*,
  2017 WL 1214503 (N.D.N.Y. Mar. 31, 2017) ................................. 22, 23

*Wyeth v. Levine*,
  555 U.S. 555 (2009) ....................................................................... 26

*Zeiger v. WellPet LLC*,
  304 F. Supp. 3d 837 (N.D. Cal. 2018) ..................................... 3, 7, 15, 20

*Zeiger v. WellPet LLC,*
   526 F. Supp. 3d 652 (N.D. Cal. 2021) ................................................ 17

**STATUTES**

21 U.S. Code § 343–1(a)(2) .................................................................... 26

21 U.S. Code § 348(h)(6) ........................................................................ 24

N.Y. Gen. Bus. Law § 349 ...................................................................... 16

N.Y. Gen. Bus. Law § 350 ...................................................................... 16

Plaintiffs Ken McDowell and Joseph Collora ("Plaintiffs") respectfully submit this Memorandum in Opposition to Defendant McDonald's Corporation's Motion to Dismiss (ECF No. 23) ("MTD.").

## I.     INTRODUCTION

Consumers care about product packaging being both safe and sustainable and rank concerns about chemicals in food higher than any other concern. Compl. ¶¶ 23-27. To capitalize on these consumer preferences, Defendant markets its fast-food products, including its Big Mac and French Fries ("Products") as safe and sustainable, but misrepresents and omits material information. *Id.* ¶¶ 1, 27-39. Independent research identified harmful PFAS in the Products' packaging, and further testing confirms that the Products' packaging contains heightened levels of organic fluorine indicative of PFAS. *Id.* ¶¶ 4-8, 41-47. PFAS are a group of bio-accumulative chemicals with many toxicological effects that are highly persistent in the human body and the environment. *Id.* ¶¶ 1-9, 41-58. Defendant unnecessarily uses PFAS in the Products' packaging to target the Products' grease, meaning that "PFAS in food packaging migrates[] onto the food, exposing consumers to PFAS via ingestion." *Id.* ¶ 48-51.

The Court should deny Defendant's motion to dismiss, which distorts Plaintiffs' allegations and extrinsic material to raise premature fact-questions. Defendant overlooks Plaintiffs' omission-based theory, flouts Seventh Circuit precedent regarding standing and Rule 9(b), throws fact-intensive arguments about reliance (neglecting that several claims require no reliance), and falls woefully short of its burden to show doctrines like preemption apply.

## II.     ARGUMENT

### A.     Plaintiffs Sufficiently Allege Article III Standing

Defendant argues that "Plaintiffs have not alleged, much less shown, that they have suffered an injury in fact." MTD at 7. But, "[a]t the pleading stage a plaintiff need only allege,

not prove, facts establishing standing." *United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 642 (7th Cir. 2015). And under controlling precedent of *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011), Plaintiffs have alleged sufficient facts that plausibly suggest that they have standing to sue. *See also Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). To manufacture a standing issue, Defendant relies on out-of-circuit cases that are woefully out of concert with *Aqua Dots*. Defendant cannot look elsewhere for a different standard, nor ask the Court to use 12(b)(1) "to decide the merits of the case." *See Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).

Plaintiffs allege that Defendant's Products "contain harmful PFAS," "a group of synthetic chemicals known to be harmful . . . even at very low levels," and that much has been shown by direct testing for various PFAS and additional laboratory tests that show "heightened levels of organic fluorine" indicative of PFAS. *See* Compl. ¶¶ 41-47. Plaintiffs allege that "PFAS in food packaging migrates[] onto the food, exposing consumers to PFAS via ingestion" and that "*all* PFAS contain carbon-fluorine bonds . . . which make them highly persistent both in the environment and in human bodies." *See id.* ¶¶ 51-52 (emphasis added). Plaintiffs include various allegations regarding the harmful effects (including as to the specific PFAS found in the Products' packaging) and their injuries due to Defendant's material omissions and misrepresentations. *See, e.g., id.* ¶¶ 2, 4, 10-13, 27-43, 53, 54-58, 65, 71.

Plaintiffs seek monetary relief because they paid more than they would have had they known the Products expose them and the environment to harmful PFAS and heightened levels of organic fluorine indicative of PFAS. Compl. ¶¶ 15-18, 59, 62*; Willard v. Tropicana Mfg. Co.*, Inc., 577 F. Supp. 3d 814, 823 (N.D. Ill. 2021) (Valderrama, J.) (citing *Aqua Dots*); *Leslie v. Medline Indus., Inc.*, 2021 WL 4477923, at *5 (N.D. Ill. Sept. 30, 2021) (Valderrama, J.) ("[E]xposure to harmful contaminants is a sufficiently 'concrete and particularized' injury to

satisfy the first prong of the standing analysis"); *Barnes v. Unilever United States Inc.*, 2022 WL 2915629, at \*2 (N.D. Ill. July 24, 2022) (finding sufficient economic injury where plaintiff would not have purchased product "had she known they contained a human carcinogen"); *Barnes* Tr. at p. 23, l. 18 (Ex. I) (stating *Aqua Dots* is "pretty darn close to [the *Barnes* case].)."

Using Rule 12(b)(1), Defendant asks the Court to resolve factual disputes in Defendant's favor. Defendant counters that the PFAS in its Products are harmless. But the Court must accept Plaintiffs' well-pleaded allegations that PFAS, and thus the Products at issue containing harmful PFAS and heightened levels of organic fluorine indicating PFAS, persist and accumulate in human bodies and the environment. *See Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647 (2022) ("For standing purposes, we accept as valid the merits of appellees' legal claims . . . ."); *Barnes*, 2022 WL 2915629, at \*1 (accepting as true products contained carcinogen). Yet, Defendant insists that: (1) the Court should ignore *Aqua Dots*; (2) Plaintiffs must personally test their products, a notion rejected in Defendant's cited cases; (3) Plaintiffs' cited sources claim that "only particular PFAS have the potential to be harmful," which is a mischaracterization of those sources; and (4) the Court should view the alleged studies in Defendant's favor.

Defendant's arguments repeatedly conflate the question of whether Plaintiffs have standing with the question of whether Plaintiffs' claims have merit and should thus be rejected. *See Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 846 (N.D. Cal. 2018) (rejecting purported "standing" challenge that plaintiffs "cannot establish that defendant's Products contain unsafe amounts of arsenic, lead, or BPA"). Defendant also repeatedly challenges Plaintiffs' science allegations prematurely, as such factual allegations are not properly adjudicated at this stage. The Court need not mine extrinsic documents to determine that it has jurisdiction, nor need it resolve Defendants' fact-intensive challenges disputing the merit of Plaintiffs' claims. Such

questions should be reserved for a later stage when the parties will have the benefit of a developed record and expert reports. Plaintiffs still address those extraneous arguments below.

### 1. Defendant's Arguments Against Standing Do Not Disturb Binding Seventh Circuit Precedent

Defendant contends that Plaintiffs "plead hypothetical, economic harm, not concrete injury." MTD at 9. Defendant challenges only the insufficiency of alleged economic harm based on a benefit-of-the-bargain theory, *see* MTD at 9-12, and thus is foreclosed from raising new arguments about other theories. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("[A] party waives an argument by failing to make it before the district court . . . ."). And Defendant's arguments regarding economic harm fail. Defendant relies on authority that is neither binding nor persuasive in the face of on-point Seventh Circuit authority. The Seventh Circuit has made clear that risk of harm, even in the absence of physical injury, suffices for economic injury. *Aqua Dots*, 654 F.3d at 751; *see also Barnes*, 2022 WL 2915629, at *1 & n.1 ("Barnes's theory of injury holds water even if based on the proposition that she would not have purchased the product had she known of the risk it contained benzene.").

Accordingly, Plaintiffs have standing for economic injury under *Aqua Dots* and its progeny. Despite the Court's standing order, Defendant seeks to distinguish *Aqua Dots* in a footnote. MTD at 12 n.7. The Court should dismiss Defendant's disregard of the applicable law and rules for each of its substantive arguments in footnotes. Further, Defendant points to nothing in *Aqua Dots* to support the distinctions it seeks to carve out. Specifically, in *Aqua Dots*, the plaintiffs sued the manufacturer and distributors of a children's toy consisting of "small, brightly colored beads." 654 F.3d at 749. "When ingested," the adhesive "metabolize[d] into gamma-hydroxybutyric acid (GHB), which can induce nausea, dizziness, drowsiness, agitation, depressed breathing, amnesia, unconsciousness, and death." *Id.* The plaintiffs were parents who purchased the products for their children *who suffered no physical injury*. *Id.* at 750. The

defendant argued that the plaintiffs lacked standing "because none of the plaintiffs (or their children) was injured by swallowing the beads." *Id.* at 750–51. The Seventh Circuit explained that any lack of a physical injury did "not mean that they were uninjured." *Id.* at 751. It held that the "plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing." *Id.* at 751. Here, Plaintiffs' injury is financial: they paid more than they would have had they known the Products contained or had the risk of containing PFAS. Compl. at ¶¶ 15-17, 61.

Defendant steps over *Aqua Dots* and primarily relies on out-of-circuit law. Defendant relies heavily on *Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1116 (S.D. Ind. 2011), which is inconsistent with *Aqua Dots*. *See, e.g.*, *Lipton v. Chattem*, Inc., 2012 WL 1192083, at *4 (N.D. Ill. Apr. 10, 2012) (disagreeing with *Hughes* in identical case); *Askin v. Quaker Oats Co.*, 818 F. Supp. 2d 1081, 1085 (N.D. Ill. 2011). Additionally, courts have rejected Defendant's arguments concerning any purported failure to allege information pertaining to their expectations. *See* MTD at 12; *Muir v. Playtex Prod., LLC*, 983 F. Supp. 2d 980, 987 (N.D. Ill. 2013) ("The *Aqua Dots* plaintiffs did not have to allege that the toys failed to meet their expectations to establish standing . . . ."). And Defendant's cases concerning the damages element of an ICFA claim, and not standing, are inapposite. *See Sabo v. Wellpet, LLC*, 250 F. Supp. 3d 332, 337 (N.D. Ill. 2017); *Moyer v. Michaels Stores, Inc.*, 2014 WL 3511500, at *6 (N.D. Ill. July 14, 2014).

In all, *Aqua Dots* is controlling. In addition to being inapplicable in the face of on-point Seventh Circuit law, Defendant's other cases are distinguishable. For example, unlike here, the *Johnson & Johnson* plaintiff put forth only a single injury theory. *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 281–82 (3d Cir. 2018); *see also Herrington v. Johnson & Johnson Consumer Companies, Inc.*, 2010 WL 3448531, at *2–5 (N.D. Cal. Sept. 1, 2010) (noting plaintiffs never alleged that they suffered economic injury

because "they overpaid or otherwise did not enjoy the benefit of their bargain").  And *Kimca v. Sprout Foods, Inc.*, 2022 WL 1213488, at *5–8 (D.N.J. Apr. 25, 2022), is inapposite, as Plaintiffs include sufficient factual bases for the amounts exceeding relevant standards for food packaging specifically.  Compl. ¶¶ 5-9.  Defendant also fails to acknowledge that this case concerns actionable affirmative misrepresentations *and omissions*, and more than one injury theory, including premium overpayment and benefit-of-the-bargain.  *See* Compl. ¶¶ 62, 170, 261.

## 2.    Plaintiffs Sufficiently Allege a Particularized Injury

Ignoring *Aqua Dots*, Defendant demands a more particularized injury than is required. Defendant primarily argues that Plaintiffs must link test results to the literal products they purchased and prove which precise PFAS were in those Products.  Defendant again relies on out-of-circuit cases that are inapposite, or otherwise refute its position.  Those courts and other courts in this district and elsewhere have roundly rejected Defendants' position that Plaintiffs must have performed testing on the items they purchased.  *See Pels v. Keurig Dr. Pepper, Inc.*, 2019 WL 5813422, at *4–5 (N.D. Cal. Nov. 7, 2019); *Kimca v. Sprout Foods, Inc.*, 2022 WL 1213488, at *3–5 (D.N.J. Apr. 25, 2022); *Barnes*, 2022 WL 2915629, at *1; *Berke v. Whole Foods Mkt., Inc.*, 2020 WL 5802370, at *7 (C.D. Cal. Sept. 18, 2020); *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 202 (W.D.N.Y. 2020).  Plaintiffs' allegations concerning representative testing and Defendant's manufacturing support Plaintiffs' theory.  *See* Compl. ¶¶ 2, 4-8, 52-58.

Plaintiffs focus on Defendant's Big Mac and French Fries and allege that various tests show that Defendant's representations and omissions are false and misleading.  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss," courts must "presume that general allegations embrace those specific facts that are necessary to support the claim."  *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021) (internal quotations and alterations

omitted). "A fair reading of their" complaint shows that Plaintiffs allege that "all" products are "falsely advertised." *Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130, at *7 (N.D. Cal. Mar. 16, 2020). In contrast, Defendant's cited cases either dealt with some subset of products, as opposed to *all* products as cited by Plaintiffs, or involved tenuous allegations that the products "could contain" a potentially harmful substance. *See Schloegel v. Edgewell Pers. Care Co.*, 2022 WL 808694, at *1 (W.D. Mo. Mar. 16, 2022) (allegations regarding "some—but not all" hot dogs); *Doss v. Gen. Mills, Inc.*, 2019 WL 7946028, at *2 (S.D. Fla. June 14, 2019), *aff'd*, 816 F. App'x 312 (11th Cir. 2020).

Defendant also mischaracterizes Plaintiffs' allegations to fabricate a standing issue. Defendant consistently misrepresents Plaintiffs' allegations to suggest that Plaintiffs only cite "third-party articles," overlooking allegations that *Plaintiffs themselves also* commissioned tests confirming that the Products' packaging contains "organic fluorine, which is indicative of the existence of PFAS." *Compare* MTD at 7-8 *with* Compl. ¶¶ 5, 47. A court in *Defendant's* cited cases has soundly determined that fluorine testing is a valid measure for determining the existence of PFAS. RJN, Ex. N; *GMO Free USA v. Coty Inc.*, et al., Case No. 2021 CA 004786 B (D.C. Super. June 1, 2022) ("*GMO Free* Order") ("TFUSA plausibly alleges that the product contains PFAS based on its fluorine testing."). And Defendant proliferates its improper fact-intensive arguments that are contrary to the case law and Plaintiffs' allegations, indicating that PFAS in food packaging migrates onto food and identifying specific PFAS. For instance, Defendant points to no authority to support its own scientific theory that any "brief" placement of food in packaging containing PFAS makes migration of PFAS impossible. *See also Zeiger*, 304 F. Supp. 3d at 850 (disregarding defendant's arguments about product consumption). In all, the Court should reject Defendant's attempts to establish its own scientific theories and mischaracterize Plaintiffs' allegations to fit its inapposite cases.

### 3. Plaintiffs' Allegations of Harm Are Plausible

Against the clear terms of Plaintiffs' allegations, Defendant argues that Plaintiffs do not allege facts that the "packaging contained a harmful substance." MTD at 8. Defendant effectively requires Plaintiffs prove which particular harmful PFAS are in each Product. Plaintiffs need not prove their case at the pleading stage. *See* MTD at 8 (citing *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588–89, 591 (7th Cir. 2016) (holding plaintiffs sufficiently alleged standing for RESPA claim but provided insufficient evidence at *summary judgment*). This Court should not entertain Defendant's granular arguments about PFAS at this early stage. However, should the Court investigate these claims, Defendant not only provides no grounds to cast aside Plaintiffs' PFAS allegations, but also mischaracterizes cited sources to try to send the Court astray.

### a. Defendant provides no good reason to cast aside well-pleaded allegations concerning the specific PFAS identified

Crucially, Defendant again overlooks well-pleaded allegations identifying harmful PFAS in a 2019 study. *See* Compl. ¶¶ 41-43. Defendant knows that such allegations bolster Plaintiffs' other testing allegations. Defendant's sole challenge to those allegations requires the Court to construe the allegations regarding the 2019 study in its favor. Specifically, Defendant argues that the Peaslee study was performed on a "French Fries *carboard box* (as opposed to the *bag* cited in the other articles), meaning that there is no correlation between that study and the other results cited by Plaintiffs." MTD at 9. But that inference is contrary to Plaintiffs' allegations and common sense. The more reasonable inference to draw is that Defendant consistently "use[s] PFAS in [its] food packaging" to provide a "coating" that "acts 'as a barrier to keep grease from escaping' and 'from leaking into people's hands.'" Compl. ¶ 48. Between all studies, Plaintiffs' allegations show that Defendant unnecessarily uses PFAS regardless of the packaging type to coat grease from its French Fries. Indeed, Defendant's U.S. website indicates

that it packages its French Fries in either a bag or box depending on the order size. Malmstrom Decl. ¶¶ 2-6; Exs. A-D. Additionally, the Court should reject Defendant's speculative assertions that Plaintiffs only consumed fries from a paper bag, when Defendant offers French Fries in a cardboard for all but one size. *See id.*; *Compare* MTD at 9 *with* Compl. ¶ 1, 7-8, 15, 17.

Similarly, Defendant's speculation given its apparent disagreements with the methodology and conclusions of the underlying studies is improper at the pleading stage. *See Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 786, 794–95 (N.D. Cal. 2015) (disregarding defendant's repeated fact-based arguments concerning third-party testing); *Kanan v. Thinx Inc.*, 2021 WL 4464200, at *6 (C.D. Cal. June 23, 2021) (holding in PFAS-related case that "arguments about the accuracy of the alleged testing and the causation versus correlation issue are inappropriate at the motion to dismiss stage").

### b. Defendant mischaracterizes cited sources to fabricate a standing issue

Defendant asks the Court to consider a litany of extrinsic materials to resolve various, premature factual disputes. Defendant vaguely claims that Plaintiffs' allegations are "inconsistent with cited materials" in the complaint. MTD at 9. But Defendant does not meaningfully explain how any cited material shows some inconsistency that renders Plaintiffs' case implausible. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)."). Defendant instead incorrectly claims in broad strokes that "the cited references note PFAS are not necessarily unsafe" and that "those materials claim[] only particular PFAS have the potential to be harmful." *Id.* at 9-10 (citing Compl. ¶¶ 2-3, 5, 8, 44-46, 53, 55 and Exhibits I-L).[1]

---

[1] Defendant's pin cites refer to allegations with no citations to other sources, *see* Compl. ¶¶ 5, 8, 46, and those allegations thus could not present contradictory information from cited sources.

No cited source supports Defendant's position or otherwise contains some contradictory information that makes Plaintiffs' theory implausible. *See* Compl. ¶¶ 2-3, 44-45, 53, 55 and Exhibits I-L). Defendant's first claim that "the cited references note PFAS are not necessarily unsafe," *see* MTD at 9 (citing Compl. ¶¶ 44-45) focuses on two studies. But neither study supports Defendant's scientific theories. First, the Toxic Free Future Study, *see* Compl. ¶ 44, only contains information supporting Plaintiffs' case theory, including the valid use of fluorine testing and PFAS warranted treatment as a class.[2] *See* Exhibit F. Second, the Consumer Reports Study, *see* Compl. ¶ 45, also contains information supporting Plaintiffs' case theory, including the migration of PFAS from food packaging and the use of fluorine content to test for PFAS.[3] *See* Exhibit G.

And as to Defendant's other challenges, *see* MTD at 4, 8, both studies dovetail with other research. Researchers are concerned about the threats that PFAS present as a class, including with respect to their presence in food packaging. It is well-established that "chemicals migrate from food contact articles into food."[4] Among others, Dr. Carol F. Kwiatkowski has written that

---

[2] For example, that study indicates: (1) "These 'forever chemicals' are dangerous to humans and wildlife and have contaminated the drinking water of millions of people across the U.S. Exposure to PFAS is an especially high concern in the context of COVID-19 . . . ."; (2) "Because PFAS are such a large and complex class, total fluorine is typically used as a screening method for PFAS treatment."; (3) "PFAS should be regulated as an entire class due to their high persistence, potential for accumulation, and hazards."

[3] For example, the study states: (1) " PFAS exposure has been linked to a growing list of problems, including immune system suppression, lower birth weight, and increased risk for some cancers. This raises alarms about the use of these compounds, especially in items such as burger wrappers and salad bowls."; (2) "'We know that these substances migrate into food you eat,' . . . That's especially likely when food is fatty, salty, or acidic . . ."; (3) "Identifying the exact type of PFAS in a product is complex: There are more than 9,000 known PFAS, yet common testing methods can identify only a couple dozen. So CR tested products for their total organic fluorine content, which is considered the simplest way to assess a material's total PFAS content. That's because all PFAS contain organic fluorine, and there are few other sources of the compound, says Graham Peaslee, PhD . . . who has studied PFAS in food packaging."; and (4) "In addition, research from the EPA and elsewhere confirms that many newer PFAS chemicals, like their older cousins, are likely to remain in the environment almost indefinitely and to pose health risks, especially to infants."

[4] Jane Muncke et al., "Impacts of Food Contact Chemicals on Human Health: A Consensus Statement," *Environmental Health* (2020). Malmstrom Decl. ¶ 7, Ex. E.

"[a]n overarching property of all PFAS is that they have highly stable perfluorocarbon moieties in their molecular structure," and the "high persistence of PFAS results in long-term accumulation in the environment and living organisms."[5]

Among the PFAS that have been studied, "common or shared adverse effects have been observed."[6]  Additionally, Dr. Ian T. Cousins concluded that "[e]ven if some PFAS are considered of low health concern, there may be starting materials, breakdown products and/or other PFAS by-products of higher concern released during their lifecycle (i.e. in the case of certain fluoropolymers) or they may be of high climate / environmental concern."[7]  Indeed, Dr. Cousins writes that "[d]espite their diversity, PFAS do share one common structural feature that makes them highly problematic, namely the presence of perfluoroalkyl moieties, resulting in their shared resistance to environmental and metabolic degradation."  *Id.* at 2308.  The researchers explained that the "concerns regarding the high persistence of chemicals" including "[i]ncreasing concentrations will result in increased exposures and therefore increased probabilities for known and unknown health effects, be it by individual PFAS and/or in a mixture with other substances."  *Id.* at 2309.

Again, Defendant flouts the science and fails to address core allegations regarding high persistence and bioaccumulation.  That oversight is glaring in light of the PFAS identified and the high levels of organic fluorine at issue.  All told, it is premature to conclude as Defendant has, contrary to Plaintiffs' allegations and the grain of the science, that PFAS are harmless.  *City*

---

[5] Carol F. Kwiatkowski et al., "Scientific Basis for Managing PFAS as a Chemical Class," *Environ. Sci. Technol. Lett.* 7, 8, 532-43 (2020).  Malmstrom Decl. ¶ 8, Ex. F.

[6] Carol F. Kwiatkowski et al., Response to "Comment on Scientific Basis for Managing PFAS as a Chemical Class," *Environ. Sci. Technol. Lett.* 8, 195-197 (2021).  Malmstrom Decl. ¶ 9, Ex. G.

[7] Ian T. Cousins et al., "The High Persistence of PFAS is Sufficient for their Management as a Chemical Class," *Envior Sci Process Impacts* 22, 2307-2312 (2020).  Malmstrom Decl. ¶ 10, Ex. H.

*of Pomona v. SMQ N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) ("A factual dispute is best settled by a battle of the experts before the fact finder, not by judicial fiat.").

Next, Defendant's arguments that the cited materials "claim[] only particular PFAS have the potential to be harmful," is also unsupported. *Id.* at 10 (citing Compl. ¶¶ 2-3, 53, 55 and Exhibits I-L). Defendant points to nowhere in those cited sources describing that statement. *See* Compl. ¶ 2 and Exhibit I; *see also* Compl. ¶ 53 and Exhibit J (documenting studies providing "insights into the potential adverse health outcomes of PFAS in the human bodies"); Compl. ¶ 53 and Exhibit M ("PFAS are widely used, long lasting chemicals, components of which break down very slowly over time."); Compl. ¶ 55 and Exhibit K. At best, Defendant claims that no single study has considered each and every PFAS. But simply because studies have focused on certain PFAS does not mean that they conclude other PFAS are harmless. Plaintiffs' claims thus do not depend on "[s]elf-serving allegations that are inconsistent with cited materials." MTD at 9 (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011) (noting plaintiff relied on a contradictory, anonymous news source)).

Lastly, Defendant's vague contention that it obtained approval for the PFAS it uses is unsupported, and in any event, does not make Plaintiffs' theory implausible. As support, Defendant points to Mr. van Breda's declaration, but the cited paragraph does not support its contention that *all* PFAS in the Products' packaging have been approved. MTD at 2, 8. Instead, the cited paragraph generally claims that the use of "organic fluorine substances . . . have been approved" and does not even provide details as to any of the thirteen PFAS already identified by Plaintiffs, much less those others to be identified through discovery. *See* Breda Decl. ¶ 7. The cited exhibits also do not identify those specific PFAS, but instead support Plaintiffs' theory, stating that only 7.5% of Defendant's packaging contains "added fluorinated compounds" (which is false and misleading given that the Product segments surely comprise over 7.5% of

packaging);[8] that "[p]erfluorinated compounds are known to be historically persistent"; and that "McDonald's commits to not intentionally adding fluorinated compounds through our processes." Ex. A at 15, 18; Ex. B. at 37, 45; RJN, Ex. C (cited in Compl. ¶ 4 n.6) (same).

**B.    For All Relevant Claims, Plaintiffs' Allegations Satisfy Rule 9(b)**

Defendant repackages its same merits-based arguments concerning standing to assert that Plaintiffs fail to satisfy Rule 9(b). The Court should again reject those ill-suited arguments.

**1.    Plaintiffs' Allegations Are Analogous to Those Courts Have Found Sufficient Under 9(b)**

First, the Court should reject Defendant's invitation to find Plaintiffs' claims implausible until Plaintiffs prove which exact PFAS are at issue before discovery begins. MTD at 13-16. Because the formulation and manufacturing practices are within the exclusive knowledge of Defendant, only Defendant knows precisely which other PFAS are in the Products. Defendant's central case, *Andrews v. Procter & Gamble Company*, 2019 WL 6520045, at *3 (C.D. Cal. June 3, 2019), is unconvincing. The *Andrews* court found that the plaintiff had misstated the findings of the PFAS study central to that complaint's allegations. *See id.* at *3. Here, Plaintiffs consistently allege that the Products have "heightened levels of organic fluorine which is indicative of PFAS," and adds allegations about specific PFAS identified. *See* Compl. ¶¶ 4-8. Despite conclusory assertions of "vagueness," Defendant does not argue that it lacks fair notice of Plaintiffs' claims. Indeed, Plaintiffs sufficiently "describe the 'who, what, when, where, and how' of the fraud." *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011); *Wagner v. Gen. Nutrition Corp.*, 2017 WL 3070772, at *8 (N.D. Ill. July 19, 2017); Compl. ¶¶ 65-70.

---

[8] Keith Nunes, *Big Mac, McNuggets, Fries Lead 60% of McDonald's Sales* (Jan. 28, 2022), https://www.meatpoultry.com/articles/26121-big-mac-mcnuggets-fries-lead-60-of-mcdonalds-sales. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 617 (N.D. Cal. 2021) (holding "documents appear on publicly available websites and are thus proper subjects for judicial notice").

Second, Defendant overlooks Plaintiffs' separate theory of omission, and that such claims are held to a lowered pleading standard. Thus, in the omission context, "plaintiffs need not allege fraudulent concealment or nondisclosure under Rule 9(b) with the level of specificity required to allege fraudulent misrepresentation." *Waldo v. Eli Lilly & Co.*, 2014 WL 130545, at *3 (E.D. Cal. Jan. 14, 2014).

Third, courts have found analogous allegations concerning the existence of PFAS in consumer products sufficient under Rule 9(b). In *Dawood v. Gamer Advantage LLC*, 2022 WL 3108846, at *4 (E.D. Cal. Aug. 4, 2022), the plaintiff described various studies showing the harmful effects of PFAS and alleged that a spray product contained PFAS based on an academic study. *Id.* at *1. The court rejected the defendant's argument that the plaintiff's allegations concerning omissions and affirmative misrepresentations, including that the product was "safe," failed to satisfy Rule 9(b). *See id.* at *2, 4. The Court should hold the same, as the Plaintiffs sufficiently allege that Defendant's representations are false "by alleging findings" from studies identifying specific PFAS and heightened levels of organic fluorine indicative of PFAS, as well as "other studies about PFAS generally." *See id.* at *4.

## 2. Rule 9(b) Does Not and Can Not Require the Adjudication of Factual Challenges Defendant Seeks at This Stage

Defendant otherwise reiterates its fact-based arguments going to the merit of Plaintiffs' claims. Defendant cites to no cases to support its contention that third-party studies or Plaintiffs' testing are "insufficient" under 12(b)(6). MTD at 14-15. Courts have held that no testing at all is required by the plaintiff or a third party to assert analogous claims. *See, e.g., Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 242 (S.D.N.Y. 2021) (rejecting "extraordinary argument that the Court should not accept as true the pleaded facts unless they are supported by scientific studies"); *Fine v. ConAgra Foods, Inc.*, 2010 WL 11595914, at *1 n.3 (C.D. Cal. June 29, 2010). Plaintiffs' allegations "are sufficient to put [Defendant] on notice of the

circumstances giving rise to their claims, and as such, satisfy Rule 9(b)." *See Zeiger*, 304 F. Supp. 3d at 850.

Defendant provides no good reason to disregard any of the alleged studies, or other allegations that Defendant repeatedly mischaracterizes. For instance, Defendant argues that Plaintiffs only allege that (1) "the packaging *may* contain some type of PFAS based on fluorine and organic fluorine testing"; and (2) that the packaging, rather than the food, contains harmful substances. MTD at 13. These arguments overlook allegations about heightened levels of organic fluorine indicating intentional use of PFAS, specific PFAS identified in an academic study, as well as allegations concerning migration of PFAS from packaging to food.

The Court should also disregard Defendant's speculation about the underlying studies, such as "what part of the cardboard box was tested." MTD at 13-15. Those fact-based challenges remain improper at the pleading stage. *Wagner*, 2017 WL 3070772, at *7 (rejecting "arguments that Plaintiff cannot rely on the studies because they do not involve the Products, their specific dosages, and their methods of ingestion"). Defendant provides no reason to find the fluorine testing method used by scientists and industry implausible, when its own cited case finds that method plausible. And Defendant injects its own facts into the complaint, claiming for example, that Plaintiffs only ate French Fries from a paper bag or that the Peaslee study "purported to find [PFAS] at extremely low levels." MTD at 14-15. And Defendant's efforts to view the alleged tests in a vacuum fail, as the tests cover all French Fries packaging materials.

Neither is the Court required to credit Defendant's scientific counter-theories, including its curious argument that it is implausible that even eating a cardboard box containing PFAS would be harmful. MTD at 15. Under Plaintiffs' theory, when Defendant's marketing

emphasizes safety and sustainability, reasonable consumers would want to know whether any

food contact material—that as alleged migrate into food—contain PFAS, regardless of the level.[9]

### 3. Plaintiffs Sufficiently Allege Reliance (Though Not All Claims Require Reliance)

Plaintiffs have adequately alleged reliance on Defendant's affirmative misrepresentations and omissions for all relevant claims. *Dawood*, 2022 WL 3108846, at *4 ("The complaint also alleges that plaintiff relied on the representations, or lack thereof, and would have acted differently if he knew about the existence of PFAS in FogAway."); *see also Bush v. Ancient Brands, LLC*, 2021 WL 5232687, at *5 (N.D.N.Y. Nov. 10, 2021) (holding plaintiffs who "described the alleged wrongdoing" and provided "several examples" provided "fair notice of their claim consistent with Rule 9(b)"). Defendant does not argue that it lacks notice of which misrepresentations are relevant, but instead raises improper arguments.

First, Defendant improperly raises more fact-intensive arguments. For example, Defendant argues that the claims on the Big Mac packaging could not be relied on because they "are on the inside of the carton." MTD at 15. That argument is contrary to Plaintiffs' allegations, and Defendant cites no case stating that product packaging cannot affect purchasing decisions. *See* Compl. ¶ 10. Further, Defendant's argument also overlooks that Plaintiffs specify that they purchased the Products repeatedly for years. *Id.* at ¶¶ 15, 17.

Second, Defendant disregards the requirements of various causes of action, for which reliance is inferred, or not required at all. For example, neither New York General Business Law § 349 nor § 350 require "reliance on a misleading act or practice." *Suchanek v. Sturm Foods, Inc.*, 2018 WL 6617106, at *11 (S.D. Ill. July 3, 2018). As to various claims, Defendant fails to acknowledge that its misrepresentations and omissions were material. *See, e.g.*, FAC ¶¶ 15, 17,

---

[9] It appears Defendant misunderstands Plaintiffs' theory. It is the heightened *level* of *organic fluorine* that is concerning, as such high levels are indicative of the intentional use of *PFAS*, which are concerning at any level under Plaintiffs' theory of the case.

23-25, 61, 65.  As the Ninth Circuit held in *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1056 (9th Cir. 2017), "actual reliance . . . is inferred from the misrepresentation of a material fact."  *See also In re Argon Credit LLC*, 632 B.R. 300, 308 (Bankr. N.D. Ill. 2021) (same as to UCL fraud claim); *Suchanek*, 2018 WL 6617106, at *13 (CLRA).  "Accordingly, to have alleged reliance on Defendant's misrepresentation [or omission] of material fact, [a plaintiff] needed only establish it to be plausible that a 'reasonable man would attach importance to [their] existence or nonexistence in determining his choice of action in the transaction in question."  *Friedman*, 855 F.3d at 1056.

Here, Plaintiffs provide allegations showing that Defendant's claims would be material.  Compl. ¶¶ 23-27 (consumer preferences and purchasing patterns).  Plaintiffs set out the problems presented by PFAS and allege that Defendant knows PFAS are unnecessary, as competitors' products have been found "to contain no detectable levels of organic fluorine."  *See id.* ¶¶ 41-58.  These allegations are consistent with cases involving an unexpected risk.  *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 693 (N.D. Cal. 2021) ("[G]iven the admissible evidence of the dangerousness of the accumulation of lead and arsenic, a reasonable consumer could believe the omission of that information was material."); *Ehlrich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010).  Given the material nature of the misrepresentations and omissions, reliance is inferred.

Defendant's cases are inapposite.  *See*, *e.g.*, *Schiesser v. Ford Motor Co.*, 2017 WL 1283499, at *6 (N.D. Ill. Apr. 6, 2017) (noting the plaintiff only "generally allege[d] that he purchased the Vehicle 'based on Ford's reputation and in the belief that the Explorer was a safe vehicle'").  For example, in *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014), the plaintiff failed to support his price deception theory that the defendant advertised normal prices as price reductions.  The plaintiff only generally stated that he saw some "sales

prices" and provided a general "non-exhaustive list" of the defendant's sales promotions over various mediums. *Id.* at 735-36. The Seventh Circuit held that the plaintiff did not need to "provide the precise date, time, and location that he saw the advertisement or every word that was included on it." *Id.* at 737. But it found his indication that items were offered at "sales prices" too vague and found the general list of promotions did not support the theory of the generalized, "constant or perpetual" deceptive sales practice that the plaintiff alleged. *Id.* at 737-38. Unlike the *Camasta* plaintiff, Plaintiffs support their theory and identify non-amorphous representations. Defendant thus demands the type of precise details that are not required.

### C. Plaintiffs State Actionable Claims Based on Affirmative Misrepresentations, As Well As Omissions That Defendant Overlooks

The Court should reject Defendant's challenge that certain affirmative misrepresentations are not misleading. MTD at 16-21. Defendant again does not challenge Plaintiffs' claims based on its fraudulent omissions. *See Dawood*, 2022 WL 3108846, at *2 ("[C]onsumers could interpret FogAway to be safe because of defendant's omissions regardless of whether defendant explicitly stated FogAway is safe."). Because Defendant fails to address these claims, Plaintiffs' omission-based claims and fraudulent concealment claims should proceed. *See Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606 (2014) (outlining fraudulent concealment elements); *Sprint Spectrum Realty Co., LLC v. Hartkopf*, 2019 WL 6251251, at *3 (N.D. Cal. Nov. 22, 2019).

In any event, Defendant zeroes in on select affirmative misrepresentations, without referencing all misrepresentations. *See, e.g.*, Compl. ¶¶ 29-30, 32. As to those statements it does challenge, Defendant's arguments fail. Plaintiffs' theory clearly maps onto Defendant's misrepresentations concerning its packaging and products. Plaintiffs allege that Defendant emphasized that its Products, including its packaging, are safe and sustainable. *See, e.g., id.* ¶¶ 13, 36. Plaintiffs allege that Defendant "amplified" the ethos of "food safety" "in its packaging"

and "emphasized safety and sustainability." *Id.* ¶¶ 35-36. Under Plaintiffs' theory, Defendant's statements—that "food safety" is a "key consideration" and "top priority," that it "[p]rovid[es] safe food," that it "integrate[s] food safety into the design of food [and] packaging," that its "[p]ackaging helps" it to "serve food quickly and safely to" consumers—are false and misleading. *See*, *e.g.*, *id.* ¶¶ 31-34, 38. Plaintiffs also allege that Defendant designs its packaging to "emphasize[] the sustainable nature of its Products' packaging," stating, for example, "[p]ackaging from responsible sources." *Id.* ¶¶ 10-12. Defendant designs its packaging to "assure consumers that the Products packaging is sustainable and can be trusted," as the logo used is known to "show[] sustainable credentials to" consumers. *See id.* As such, Plaintiffs allege that Defendant deceptively exploits consumer preferences for products without chemicals that are harmful to humans and the environment.

Defendant contends that Plaintiffs cannot satisfy the reasonable consumer standard. This is not the rare case such that the Court can find as a matter of law that no statement is "capable of misleading reasonable consumers." *See* MTD at 16; *Dawood*, 2022 WL 3108846, at *2 ("Dismissal is appropriate only in the 'rare situation' where the 'advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived.'"). The Court should thus decline Defendant's invitation to view each misrepresentation in the narrowest view possible in Defendant's favor.

Should this Court engage in an evaluation of what reasonable consumers believe, as previously noted, it is premature to conclude as Defendant has that PFAS raise no harm. MTD at 17 (arguing that select statements have "nothing to do with PFAS"). Defendant does not, and cannot argue, that PFAS are not harmful to the environment; its own exhibits clearly spell out their harm. *See* van Breda Decl. ¶ 5, Ex. A at 18. And it is unclear how representations about Defendant's products being safe are "unmeasurable." MTD at 19. Either the Product packaging

safely delivers the food as Defendant claims it is, or it does not. *See Hauter v. Zogarts*, 14 Cal. 3d 104, 112, 534 P.2d 377, 381 (1975) ("Courts have consistently held similar promises of safety to be representations of fact."). The same is true for Defendant's sustainability representations; for example, either the packaging comes "from responsible sources" or it does not.

Additionally, Defendant cannot hide behind environmentally friendly logos to conceal the fact that it adds PFAS to the packaging that will persist in and harm the environment. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 471 (9th Cir. 2017) ("California courts have held that even technically correct labels can be misleading."); *Mier v. CVS Pharmacy, Inc.*, 2021 WL 1559367, at *6 (C.D. Cal. Mar. 22, 2021) (holding "FAL has been interpreted to apply" to advertising that "has a capacity, likelihood or tendency to deceive"). It is not "unreasonable" for consumers to assume that Defendant does not add harmful chemicals to packaging that it represents as safe and sustainable. Defendant raises its own interpretation as if it is obvious that such statements could only be about "preventing foodborne illnesses." Plaintiffs' allegations that reasonable consumers would interpret representations that Products are "safe" and sustainable to "mean that" they do "not contain" substances that are harmful to humans and the environment "is plausible." *Zeiger*, 304 F. Supp. 3d at 852 ("allegation that a reasonable consumer would understand 'natural, safe and pure' to mean that CORE Ocean did not contain the chemical BPA is plausible").

Defendant's cited cases to these points are inapposite. *See*, *e.g.*, *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 19, 21 (N.D. Cal. 2020) (finding ingredient list on back of product dispelled any doubt and declining to consider logo from general website that was different from the logo on the product itself). For example, in *GMO Free*, the plaintiffs alleged that the defendant's products contained organic fluorine indicating PFAS, which are "damaging to human health and the environment." *GMO Free* Order at 1. They alleged that the defendant

thus made false and misleading representations when it stated, for example, that its "products have an important role to play in building a sustainable future." *Id.* at 6. Though the plaintiff had plausibly alleged that the products contained PFAS, the court found that the plaintiffs had not alleged that defendants represented that the products were safe or sustainable. *Id.* at 4-5. The plaintiffs also failed to provide *any support* that the particular PFAS at issue was harmful. *See id.* Here, as noted above, Plaintiffs allege that Defendant represented the packaging at issue is safe and sustainable and support why those statements are false and misleading. In all, Plaintiffs have stated actionable claims based on Defendant's misrepresentations.

### D. Defendant Fails to Meet Its Burden to Show Preemption

Defendant does not meet its heavy burden to show that Plaintiff's claims are preempted. Defendant groups all claims, failing to distinguish that its preemption challenge only applies to Plaintiffs' state-law claims. And still, Defendant fails to show that those claims are preempted. "Preemption can take on three different forms: express preemption, field preemption, and conflict preemption." *Aux Sable Liquid Prod. v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008). Defendant only argues that conflict preemption, applies. To show conflict preemption, Defendant must show either that it would be "impossible" to comply with both state and federal law or that state law constitutes an "obstacle" to satisfying the purposes and objectives of Congress. *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013). Defendant identifies no impossible conflict, but it instead argues that Plaintiffs' state-law claims would pose an obstacle to federal law. MTD at 21. Not so.

### 1. Defendant Does Not Overcome the Strong Presumption of Non-Preemption

Defendant fails to appreciate that no preemption doctrine "can be lightly applied." *Patriotic Veterans*, 736 F.3d at 1049. "Implied preemption analysis does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives';

such an endeavor 'would undercut the principle that it is Congress rather than the courts that preempts state law.'" *Id.* Yet Defendant provides the Court with a general, freewheeling analysis, disregarding the relevant analysis for overcoming the strong presumption against preemption applicable here.

"In determining whether a federal statute preempts state law," the court must begin "with the intent of Congress," and "look at the intent of Congress with a presumption of non-preemption." *Patriotic Veterans*, 736 F.3d at 1046. State consumer protection laws "are traditionally within the realm of state police power." *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 372 (N.D. Cal. 2010). Similarly, "[t]here is a strong presumption against federal preemption in the area of proper marketing and regulation of food, a realm traditionally in the power of the States." *Kosta v. Del Monte Corp.*, 2013 WL 2147413, at *6 (N.D. Cal. May 15, 2013) (citing *Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963)); *see also Williams v. Coca Cola Co.*, 2017 WL 1214503, at *3 (N.D.N.Y. Mar. 31, 2017) (same as to "area of food safety").

Defendant glosses over the strong presumption of non-preemption with conclusory assertions of a "conflict" and provides little to no helpful analysis concerning the FDCA "as a whole" and its "purpose and intended effects." *See Aux Sable*, 526 F.3d at 1034 ("To determine whether state and federal law are in conflict, it is necessary to 'examin[e] the federal statute as a whole and identify [ ] its purpose and intended effects.'"). Defendant merely provides citations indicating that the FDCA was designed to protect consumers, outlines the method of preapproval of "food contact substances," and broadly contends that all PFAS it uses were approved. MTD at 21-24. That simply does not do. "Evidence of pre-emptive purpose, whether express or implied, must therefore be sought in the text and structure of the statute at issue." *Virginia*

*Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1907 (2019) (alterations and internal quotations omitted).

Defendant's showing fails to establish that it was the "clear and manifest purpose of Congress" for the FDCA to supplant state law in a field that states have traditionally occupied. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (holding court must find "clear and manifest purpose" to preempt, particularly in cases "in which Congress has 'legislated . . . in a field which the States have traditionally occupied'"). Notwithstanding Defendant's burden, Defendant provides wholly insufficient information about "the FDCA for the Court to find obstacle preemption." *See Williams*, 2017 WL 1214503, at *3; *Lavoie-Fern v. Hershey Co.*, 2022 WL 2671856, at *5 (M.D. Pa. July 11, 2022) (same as to "insufficient" evidence of "Congress's 'clear and manifest' intent to preempt"). The Court should thus find that Defendant has failed to meet its burden. *Nachampassack v. Illinois State Toll Highway Auth.*, 2022 WL 952356, at *12 (N.D. Ill. Mar. 30, 2022) (Valderrama, J.) ("It is not the role of this court to research and construct the legal arguments open to parties . . . .").

### 2. Even if the Court Considered Defendant's Extrinsic Evidence, Defendant Does Not Make a Sufficient Showing as to Each PFAS

Skirting over exactly how Plaintiffs' state-law claims conflict with the FDCA's purpose and objectives, Defendant instead relies on the purported approval of some unspecified PFAS. Now outside of its 12(b)(1) challenge, Defendant improperly relies on Mr. van Breda's declaration. MTD at 23. And, as noted, that nebulous cite does not establish what Defendant claims. *See supra* Section II(A)(3)(b). Similarly, Defendant makes no effort to map its cited regulations onto each of the relevant PFAS that it uses. *See*, *e.g.*, MTD at 23.

Defendant's misplaced request for judicial notice fares no better, implicating numerous factual disputes. MTD at 23 (citing RJN, Ex. P). In any event, Defendant distorts any judicially noticeable "fact" from Exhibit P, which shows a list of various irrelevant substances

manufactured by different manufacturers, such as "The Sherwin-Williams Company." Further, Exhibit P states that a "food contact substance notification (FCN) is only effective for the manufacturer or supplier identified in the notification. Persons who market a FCS based on an effective notification must be able to demonstrate that the notification is effective for their food contact substance." And more fundamentally, Defendant has not even established that each PFAS used to target the grease from the Products is in fact a "food contact substance." Under the section relating to food contact substance notifications, the FDA defines a "food contact substance" as "any substance intended for use as a component of materials used in manufacturing, packing, packaging, transporting, or holding food *if such use is not intended to have any technical effect in such food*." 21 U.S. Code § 348(h)(6) (emphasis added). In all, the Court need not credit neither Defendant's unsupported factual contention that each of the PFAS used is an approved "food contact substance," nor Defendant's undeveloped legal argument that any such approval preempts all claims involving those substances.

### 3. Defendant Identifies No Conflict with Federal Law and Policy

Even if Defendant's unsupported contention about all the PFAS used was credited, that still does not provide a basis for preemption. Mere approval of a food contact substance for some manufacturer does not mean that the FDA preempts *all* state-law claims involving those substances, including claims concerning voluntary statements targeting consumer preferences.

Contrary to Defendant's assertions, Plaintiffs do not seek to enforce the FDCA, or otherwise interfere with its application. Instead, Plaintiffs' claims focus on Defendant's advertising about its Products which were voluntarily undertaken by Defendant. Such claims in no way invoke preemption. *See Cipollone v. Liggett Grp. Inc.*, 505 U.S. 504, 525 (1992) ("A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty."); *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 444 (2005) ("a cause

of action on an express warranty asks only that a manufacturer make good on the contractual commitment that it voluntarily undertook[.]").  Notably, Defendant does not argue that the FDA reviewed each of the marketing statements at issue.  Plaintiffs' claims are separate from any purported FDA certification and present theories of liability that are in the hands of states.  Even where the FDA oversees the regulation of the products at issue, state law claims regarding false or misleading claims of health or safety are not subject to conflict preemption.  *See*, *e.g.*, *Mier*, 2021 WL 1559367, at *11.  Further underscoring the lack of conflict, a fact finder could determine whether the alleged omissions and misrepresentations were misleading without reference to FDA regulations.

Defendant's chief case dealing with a different class of substances does not support preemption here.  In *Backus v. Nestle USA, Inc.*, 167 F. Supp. 3d 1068, 1071–72 (N.D. Cal. 2016), the defendant argued that the plaintiff's claims posed a conflict with an FDA order and Congressional law.  Specifically, the FDA published a final determination and declaratory order in 2015, setting a three-year compliance date requiring discontinuation of additives known as "PHOs."  *Id.*  Congress then ratified the FDA's final determination CAA § 754, setting out that no PHOs "shall be deemed adulterated" under certain sections of the FDCA because it contains PHOs until the FDA's compliance date.  *Id.* at 1072–73.  The Court held that the plaintiff's claims seeking to impose an "immediate prohibition" on PHOs in "all circumstances" conflicted with the FDA's order and CAA § 754, and thus found that those claims were impliedly preempted.  *Id.* at 1072, 1074.  Here, though Defendant seeks to paint Plaintiffs' claims as generally in tension with the FDA scheme, it points to no similar conflict with some FDA regulation or law.  And unlike the *Backus* preemption finding based in the federal law's text, Defendant shows no similar evidence of preemptive purpose in the text or structure of the FDCA.  *See Virginia Uranium, Inc.*, 139 S. Ct. at 1907.

#### 4.    Defendant's Cursory Express Preemption Challenge Fails

Though unclear, Defendant appears to tack on an express preemption challenge.  MTD at 24-25.  But Defendant points to no relevant express preemption provision.  Defendant appears to rely on 21 U.S. Code § 343–1(a)(2), but that provision applies to "nutrition labeling."  Defendant cannot extend this provision to "restaurant foods" under "principles of conflict preemption," *see* MTD at 25, which do not override the "two cornerstones" of any preemption challenge, a statute's purpose and the presumption of non-preemption.  *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009).  Plaintiffs' allegations do not fall within the FDA's express preemption requirements for listing ingredients on food labels.  In fact, Defendant succeeded in arguing the opposition position it asserts now.[10]  Thus, that *In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, 2009 WL 3762965, at *5 (W.D. Mo. Nov. 9, 2009), relied on that provision for an express preemption finding concerning nutrition labeling of an additive known as "BPA" is immaterial.  Notably, courts have disagreed with the reasoning of that holding concerning express preemption.  *See, e.g.*, *Lavoie-Fern v. Hershey Co.*, 2022 WL 2671856, at *4 (M.D. Pa. July 11, 2022); *Sciortino*, 108 F. Supp. 3d at 802, 804 ("Finally, it is noteworthy that food manufacturers have petitioned Congress to enact legislation expressly preempting state warning requirements as to ingredients that the FDA has deemed safe. . . . but no such legislation has been passed.").

Moreover, *BPA*'s other holdings undermine Defendant's arguments.  The *BPA* court explained that the other defendants' similar "preemption and primary jurisdiction arguments cannot succeed merely because the FDA has decided BPA may be safely used in food additives and that no labeling requirements are necessary to ensure BPA's safe use."  2009 WL 3762965, at *2.  The *BPA* court also rejected those arguments with respect to the defendants' similar

---

[10] *See Harris v. McDonald's Corp.*, 20-cv-06533-RS (N.D. Cal.), Dkt. No. 29 (MTD) ("First, the FDA labeling regulations . . . have no application to the Product, which has no label and is served in quick-service restaurants for immediate consumption.").

implied preemption challenge, holding that "the FDA's approval of BPA as safe without labeling requirements establishes only a regulatory minimum; nothing in these regulations either required or prohibited Defendants from providing the disclosures sought by Plaintiffs." *Id.* at *4 (distinguishing *Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000)); *see* MTD at 21 (citing *Geier*).

To this end, Defendant assumes that Plaintiffs "seek to compel disclosure of the presence of PFAS in food packaging as a condition to its sale." MTD at 24. Plaintiffs are focused on Defendant's deceptive advertising scheme. *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 484–85 (7th Cir. 2020) (rejecting defendant's overbroad reading of express preemption provision as to claims focused on deceptive statements not required by federal law). To render its advertising nondeceptive, Defendant could, for example, use PFAS alternatives. Comp. ¶ 49.

### 5.    The Safe Harbor Doctrine is Inapplicable

Defendant has not shown that any safe harbor provision is applicable here. Defendant again relies on cases concerning food labeling in which the FDA approved specific food labels or other challenged claims. And even if regulations involving food labeling were relevant, here, Defendant points to no particular label or marketing that the FDA reviewed and approved. Further, Defendant does not identify any relevant safe harbor provisions. Defendant instead cites a case detailing that the ICFA has a safe harbor provision, but the Court of Appeals held that the provision did not apply as the FDA had not approved the challenged label as nondeceptive. *See Bell*, 982 F.3d at 486. Defendant cites no authority that unspecified safe harbor provisions protect its conduct.

Defendant's reliance on *Dinan v. SanDisk LLC*, 2020 WL 364277, at *10 (N.D. Cal. Jan. 22, 2020), *aff'd*, 844 F. App'x 978 (9th Cir. 2021) is misplaced. *Dinan* involved the use of a single term "GB" to indicate decimal, rather than binary, measurements. *Id.* The plaintiff did

not "allege that any other words or images on the packaging [we]re misleading." *Id.* at \*6. The court found the California Legislature "clearly permitted" the use of GB, and thus held that the mere use of "GB" fell under safe harbor. *Id.* at \*10. Here, Defendant points to no "specific legislation" that the California Legislature "has provided a safe harbor for" its conduct. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182, 187 (1999). And Defendant's other cited cases do not even mention the safe harbor doctrine.[11] *Rock River*, reversing the grant of *summary judgment*, is also inapposite because Defendant's citation concerns the presumption of lawfulness as to any affirmative defense of "unlawful" business expectancy to an IIPEA claim. 745 F.3d at 349–50

### 6. The Primary Jurisdiction Doctrine Should Not Be Applied

Although Plaintiffs' claims are within the conventional competence of courts, Defendant next asks the Court to invoke the primary jurisdiction doctrine. Contrary to Defendant's conclusory claim, Plaintiffs' claims do not require the FDA's special expertise. Defendant's only binding citation concerns the difference between staying, rather than dismissing, cases under the doctrine. MTD at 27 (citing *Illinois Bell Tel. Co. v. Glob. NAPs Illinois, Inc.*, 551 F.3d 587, 595 (7th Cir. 2008)). Defendant has not shown, as it must, that the doctrine should be applied in light of "the purposes of the statute involved and the relevance of administrative expertise to the issue at hand." *See Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir. 1991) (holding that it was error to invoke the doctrine).

Here, Plaintiffs' alleged claims and remedies "are not dependent on any [FDA] provisions." *See id.* at 132. Importantly, the Seventh Circuit has rejected similar attempts to frame issues as involving "technical data," purportedly "uniquely within the [agency's]

---

[11] *See Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998); *Am. Home Prod. Corp. v. Johnson & Johnson*, 672 F. Supp. 135, 144 (S.D.N.Y. 1987); *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 349–50 (9th Cir. 2014).

competence." *See id.* "The reasonable-consumer determination and other issues involved in Plaintiff[s'] lawsuit are within the expertise of the courts to resolve." *See Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 899 (N.D. Cal. 2012). And Defendant has not shown that any of the "policy reasons for applying primary jurisdiction exists." *See Ryan*, 935 F.2d at 132.

### E. Plaintiffs' Remaining Claims Should Survive

The Court should also reject each of Defendant's attempts to dismiss Plaintiffs' remaining claims.[12] First, Defendant argues that Plaintiffs' claim for negligent misrepresentation must be dismissed because they "have pleaded no facts to demonstrate that they have suffered any injury beyond economic loss." MTD at 29.[13] Based on a survey of Ninth Circuit and California precedent, Judge Shubb rejected a similar argument, concluding that it was premature to conclude that an analogous negligent misrepresentation claim "is not of the type that courts have allowed to go forward because it sounds in fraud, for which economic loss is recoverable." *Dawood*, 2022 WL 3108846, at *3. And as to the New York claim, Plaintiffs do allege that Defendant imparted incorrect information beyond packaging representations. *See supra* Section II(A); Section II(A)(3)(b).

Second, Defendant argues that Plaintiffs' express warranty claim fails because they do not allege any statement warrants that the "Products are PFAS-free." MTD at 29. Defendant cites no authority requiring the Court to disregard any promise apart from some narrow "PFAS-free" promise. As to the California claim, it appears that Defendant's argument about "consumer reliance" is one relating to puffery. That conclusory argument fails. *See supra* Section II(C).

---

[12] For purposes of this motion, Plaintiffs agree with Defendant that the law of the Plaintiffs' state of residency apply for Plaintiffs' common law claims. *See Mirza v. Ignite USA, LLC*, 439 F. Supp. 3d 1058, 1066 (N.D. Ill. 2020) ("This District has held that a plaintiff's failure to specify which state's law applies to common law claims does not warrant dismissal, as it is likely that the laws of the plaintiff's state of residency will apply.").

[13] Plaintiffs withdraw their claims for Money Had and Received, Negligent Failure to Warn, and violations of the Magnuson-Moss Warranty Act.

Third, Defendant argues that Plaintiffs' *California* claim for breach of implied warranty fails because "the Products are fit for their ordinary use." MTD at 30. Defendant ignores that Plaintiffs do allege that the heightened levels of organic fluorine and unsafe PFAS render the Products "unfit for human consumption." Compl. ¶ 1. A consumable product that is unfit to be consumed has necessarily been rendered unfit. Defendant argues that Plaintiffs must allege physical injury, and further notes that Plaintiffs failed to identify a "PFAS-free representation" on the Products' labels. As to the latter argument, any reference to an explicit "representation" sounds more in *express* breach of warranty, compared to implied warranty which "arises by operation of law." *Choi v. Kimberly-Clark Worldwide, Inc.*, 2019 WL 4894120 at *11 (C.D. Cal. Aug. 28, 2019). And Defendant misleads the Court into reading a physical injury requirement into implied warranty allegations, when *Andrade-Heymsfield v. NextFoods, Inc.*, 2022 WL 1772262, at *6-7 (S.D. Cal. Apr. 27, 2022) concerns vertical contractual privity in California. *See also Choi*, 2019 WL 4894120, at *11.

Lastly, Defendant argues that "unjust enrichment is not cognizable under California or New York law because it is entirely duplicative." MTD at 28. That is wrong and such claims may be plead in the alternative. *See Shin v. ICON Found.*, 2021 WL 6117508, at *3 (N.D. Cal. Dec. 27, 2021); *Gate Techs., LLC v. Delphix Capital Mkts., LLC*, 2013 WL 3455484, at *5-6 (S.D.N.Y. July 9, 2013).

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion. Plaintiffs alternatively request leave to amend to cure any deficiencies the Court identifies.

Dated: September 22, 2022          Respectfully submitted,

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**

By:_____*/s/ Carl V. Malmstrom*_____

Carl V. Malmstrom
111 W. Jackson St., Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Fax: (212) 686-0114
Email:  malmstrom@whafh.com


**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*Pro Hac Vice* Forthcoming)
Sean L. Litteral (*Pro Hac Vice* Forthcoming)
Elvia M. Lopez (*Pro Hac Vice* Forthcoming)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ltfisher@bursor.com
      slitteral@bursor.com
      elopez@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*Pro Hac Vice* Forthcoming)
Alec M. Leslie (*Pro Hac Vice* Forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jarisohn@bursor.com
      aleslie@bursor.com

**SHUB LAW FIRM LLC**
Jonathan Shub
Kevin Laukaitis
134 Kings Hwy E., 2nd Fl.
Haddonfield, NJ 08033
T: (856) 772-7200
F: (856) 210-9088
klaukaitis@shublawyers.com
jshub@shublawyers.com

**FREED KANNER LONDON & MILLEN LLC**
Jonathan M. Jagher
FREED KANNER LONDON & MILLEN LLC
923 Fayette Street
Conshohocken, PA 19428
Tel: (610) 234-6487
jjagher@fkmlaw.com

*Attorneys for Plaintiffs and the Putative Class*