UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEN MCDOWELL and JOSEPH COLLORA, individually and on behalf of all others similarly situated, | Civil Action No. 1:22-cv-01688 |
| Plaintiffs, | Judge: Franklin U. Valderrama |
| v. | Magistrate Judge: Young B. Kim |
| MCDONALD'S CORPORATION, | |
| Defendant. | |

**DEFENDANT MCDONALD'S CORPORATION'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS**

---

Trenton H. Norris (Bar No. 164781)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415.471.3100
Facsimile: 415.471.3400
Email: trent.norris@arnoldporter.com

Lori B. Leskin (Bar No. 2540888)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 W. 55th Street
New York, NY 10019
Telephone: 212.836.8000
Facsimile: 212.836.8689
Email: lori.leskin@arnoldporter.com

Cameron Davis (Bar No. 7335765)
**ARNOLD & PORTER KAYE SCHOLER LLP**
70 W. Madison Street, Suite 4200
Chicago, IL 60602-4231
Telephone: 312.583.2300
Facsimile: 312.583.2360

*Attorneys for Defendant*
MCDONALD'S CORPORATION

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   PLAINTIFFS LACK STANDING. ....................................................................... 2

   A.  Plaintiffs Lack Particularized Injury. ............................................................. 2

   B.  Plaintiff's Contradictory Citations and Failure to Plead a Plausible Injury Do Not Amount to McDonald's Making Factual Arguments. ......................................................... 4

   C.  Plaintiffs Fail to Plead a Concrete Economic Injury. ..................................... 6

III.  THE COMPLAINT DOES NOT SATISFY RULE 9(b) ..................................... 7

IV.  BECAUSE PLAINTIFFS CANNOT IDENTIFY AN ACTIONABLE STATEMENT, THEIR CLAIMS FAIL THE REASONABLE CONSUMER TEST ................................. 11

V.   PLAINTIFFS' CLAIMS ARE PREEMPTED ................................................... 13

VI.  PLAINTIFFS' ANCILLARY CLAIMS FAIL ................................................... 14

VII. CONCLUSION ................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Abuelhawa v. Santa Clara Univ.*,
    529 F. Supp. 3d 1059 (N.D. Cal. 2021) .................................................................................14

*Andrews v. Procter & Gamble Co.*,
    No. EDCV1900075AGSHKX, 2019 WL 6520045 (C.D. Cal. June 3, 2019)................ *passim*

*Backus v. Nestle USA, Inc.*,
    167 F. Supp. 3d 1068 (N.D. Cal. 2016) .................................................................................13

*Bell v. Publix Super Markets, Inc.*,
    982 F.3d 468 (7th Cir. 2020) .................................................................................................13

*Berke v. Whole Foods Mkt., Inc.*,
    No. CV 19-7471 PSG (KSX), 2020 WL 5802370 (C.D. Cal. Sept. 18, 2020).........................3

*Boysen v. Walgreen Co.*,
    No. C 11-06262-SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012)...........................................4

*Brown v. Starbucks Corp.*,
    No. 18CV2286-JM-WVG, 2019 WL 996399 (S.D. Cal. Mar. 1, 2019)..................................15

*Dwyer v. Allbirds, Inc.*,
    No. 21-CV-5238-CS, 2022 WL 1136799 (S.D.N.Y. Apr. 18, 2022) ......................................12

*Eidmann v. Walgreen Co.*,
    522 F. Supp. 3d 634 (N.D. Cal. 2021) ...................................................................................12

*Gordon v. Target Corp.*,
    No. 7:20-cv-09589-KMK, 2022 WL 836773 (S.D.N.Y. Mar. 18, 2022) .........................12, 13

*Hammock v. Nutramarks, Inc.*,
    2016 WL 4761784 (S.D. Cal. Sept. 12, 2016) .......................................................................15

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) ...................................................................................................4

*Housey v. Procter & Gamble Co.*,
    No. 21 CIV. 2286 (NRB), 2022 WL 874731 (S.D.N.Y. Mar. 24, 2022) ..................................9

*In re Aqua Dots Prod. Liab. Litig.*,
    654 F.3d 748 (7th Cir. 2011) ...................................................................................................6

ii

*Ivie v. Kraft Foods Glob., Inc.*,
    No. C-12-02554-RMW, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013)....................................14

*Mallett v. Wisconsin Div. of Vocational Rehab.*,
    248 F.3d 1158 (7th Cir. 2000) .................................................................4

*McGee v. S-L Snacks Nat'l*,
    982 F.3d 700 (9th Cir. 2020) .................................................................7

*McKinney v. Corsair Gaming, Inc.*,
    No. 22-CV-00312-CRB, 2022 WL 2820097 (N.D. Cal. July 19, 2022) ................................15

*Nelson v. MillerCoors, LLC*,
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) .........................................................15

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
    No. 19-CV-03613-WHO, 2020 WL 1245130 (N.D. Cal. Mar. 16, 2020)................................3

*Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*,
    745 F.3d 343 (9th Cir. 2014) ............................................................13, 14

*Spector v. Mondelez Int'l, Inc.*,
    No. 15 C 4298, 2017 WL 4283711 (N.D. Ill. Sept. 27, 2017)....................................9

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) .................................................................4

*Viggiano v. Hansen Nat. Corp.*,
    944 F. Supp. 2d 877 (C.D. Cal. 2013) ........................................................15

*Waldo v. Eli Lilly & Co.*,
    No. CIV. S-13-0789 LKK, 2014 WL 130545 (E.D. Cal. Jan. 14, 2014)..............................10

*Willard v. Tropicana Mfg. Co., Inc.*,
    577 F. Supp. 3d 814 (N.D. Ill. 2021) ......................................................3, 7

*Wynn v. Topco Assocs., LLC*,
    No. 19-CV-11104-RA, 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) .................................15

*Zeiger v. WellPet LLC*,
    304 F. Supp. 3d 837 (N.D. Cal. 2018) .....................................................5, 11

## Statutes

Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791 ...................................14

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*........................................14

**<u>Other Authorities</u>**

Fed. R. Civ. P.

    Rule 8 ................................................................................................................8

    Rule 9(b) ..................................................................................... *passim*

    Rule 12(b)(1) ...................................................................................6

    Rule 12(b)(6) ...................................................................................5

## I. INTRODUCTION

Plaintiffs' Opposition fails to address the central deficiencies of their Complaint: they do not and cannot allege that any PFAS substance detected in McDonald's packaging (a) is a harmful PFAS substance, (b) is present at levels that could cause harm, or (c) has migrated to the food, much less at levels sufficient to present any risk to any consumer. For all of their fear-mongering about the dangers of PFAS, they cannot plausibly allege that consumers of McDonald's food packaged in materials approved by the FDA are in any way deceived, much less harmed. Because they cannot allege facts showing that they have been placed at risk, or that they relied on any McDonald's statements about PFAS, they lack standing to sue.

Plaintiffs nevertheless double down and argue—contrary to repeated citations in the Complaint—that the mere indication of unknown PFAS via an "organic fluorine" test is actionable and meets Rule 9(b). Rather than acknowledge the obvious inconsistencies between the Complaint's allegations and its cited materials, Plaintiffs try to distract the Court by accusing McDonald's of improperly litigating facts in a pleadings motion. But it is black letter law that plaintiffs cannot make allegations that are inconsistent with their own citations and rely on those allegations to support a plausible claim. The Court cannot ignore the contradictions in Plaintiffs' pleading.

Finally, the Opposition fails to support that any actionable advertising exists or that Plaintiffs relied on such advertising. Plaintiffs make no argument that they relied on the online statements, thus admitting these statements are not the basis of their claims. And the only packaging claims identified, concerning the paper sources of only the Big Mac carton (and not the French Fry bag or any other McDonald's product), have no relationship to whether the packaging contains fluorine or PFAS. These statements are simply not actionable, and Plaintiffs identify no other sustainability claims at issue. The Court should dismiss this case with prejudice.

1

## II. PLAINTIFFS LACK STANDING.

### A. Plaintiffs Lack Particularized Injury.

Plaintiffs' identification of an unspecified level of "organic fluorine" in some items of McDonald's packaging does not support an allegation that they suffered any particularized injury from their purchase of McDonald's Big Macs or fries. Indeed, Plaintiffs do not and cannot contest that the findings they rely upon would be consistent with McDonald's use of FDA-approved fluorinated compounds in its packaging. And importantly, Plaintiffs do not allege that any PFAS migrated to their food. Nor do they point to any allegations that any PFAS substance in the packaging is present at levels that would be harmful—much less that any particular PFAS substance is present at all.

These fundamental deficiencies are underscored by the very cases Plaintiffs cite. For example, in *Pels v. Keurig Dr. Pepper, Inc.*, the court held that plaintiff *lacked* a particularized injury because he failed to allege that he had purchased a unit of the water product that contained violative arsenic levels. No. 19-CV-03052-SI, 2019 WL 5813422, at *4 (N.D. Cal. Nov. 7, 2019). The same is true here: Plaintiffs purport to find "organic fluorine" in a single Big Mac container, but they do not allege that packaging they purchased from McDonald's contained any particular PFAS, nor that *they* were actually exposed to any PFAS from use of the packaging—much less that any of the McDonald's *food items* at issue contained any PFAS or even any "organic fluorine."

Unlike the Complaint here, other cases Plaintiffs rely on included allegations about chemical content *in the food* the plaintiff had in fact purchased, and at levels that might cause harm to a person eating the food. Opp. at 6. Thus, in *Kimca v. Sprout Foods, Inc.*, the court found that plaintiffs had alleged particularized injury because three separate entities had detected material levels of heavy metals such as lead in baby food across ten product lines. No. CV 21-12977-SRC, 2022 WL 1213488, at *5 (D.N.J. Apr. 25, 2022). The court concluded that the plaintiff had pleaded

2

that all units of the products had material levels of heavy metals. *Id*.[1] Such allegations of potentially harmful chemicals in any actual food products are notably absent here.

Also absent are allegations that the cited testing applies uniformly to different packaging items. Plaintiffs' reliance on a 2019 study that purports to find trace levels (part per billion to part per trillion amounts) of particular PFAS in a single fry *carton* does not cure this deficiency.[2] *See* Compl. ¶ 41. Aside from making no allegations about the fries themselves, Plaintiffs plead no facts indicating that the chemicals would be found in other packaging, including any current packaging they purchased or packaging identified in the Consumer Reports article—the fry *bag* and the Big Mac container. *Id*. Indeed, that article showed wide variation in organic fluorine content in McDonald's packaging, including one item in which no organic fluorine was detected. Compl. ¶ 45. Moreover, Plaintiffs acknowledge that McDonald's fries come in bags or cartons (Opp. at 8-9), but nowhere allege the purchase of a *carton*. This is not a "speculative assertion" (Opp. at 9) because the Complaint simply does not contain any allegation of a relevant purchase. *See Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 825 (N.D. Ill. 2021) (holding that plaintiffs lack standing to pursue false advertising claims against unpurchased products even if they are similar to purchased products).

Additionally, the organic fluorine results (both third party and Plaintiffs') fail to demonstrate any particular chemical composition and are perfectly consistent with McDonald's use of safe FDA-approved substances. Plaintiffs' selective reliance on the court's statement in *GMO Free USA v. Coty Inc.*, et al., Case No. 2021 CA 004786B (D.C. Super. June 1, 2022) that

---

[1] *See also Berke v. Whole Foods Mkt., Inc.*, No. CV 19-7471 PSG (KSX), 2020 WL 5802370, at *7 (C.D. Cal. Sept. 18, 2020) (holding that plaintiff sufficiently alleged that "all Starkey Water had comparatively high arsenic content" and thus stated a non-speculative injury); *Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-CV-03613-WHO, 2020 WL 1245130, at *7 (N.D. Cal. Mar. 16, 2020) (finding standing where plaintiffs sufficiently alleged all defendants' dog food contained ingredients contrary to stated label claims).

[2] The 2019 study should also be disregarded for the reasons discussed *infra* in Section IV.

plaintiff "plausibly alleges that the product contains PFAS based on its fluorine testing" (Opp. at 7) ignores the ultimate holding of that court: to dismiss that case because the organic fluorine result was insufficient. The court found "that different PFAS have potential different health effects" and that defendant's explanation of the source of the organic fluorine—PTFE (a disclosed ingredient)—sufficiently explained the detection and undercut a plausible claim. RJN, Ex. N at 4. The same outcome is warranted here. When McDonald's packaging is manufactured with organic fluorine substances, the only such substances used are FDA-approved (RJN, Ex. C (website statement); Van Breda Decl. ¶ 7 & Exs. A-B), which readily explains the organic fluorine results and voids Plaintiffs' effort to allege a particularized injury.

### B. Plaintiff's Contradictory Citations and Failure to Plead a Plausible Injury Do Not Amount to McDonald's Making Factual Arguments.

Having been called out for selectively quoting the very sources they cite in the Complaint, Plaintiffs argue that McDonald's is attempting to prematurely argue the factual merits of the case. Opp. at 9-10. Not so. Courts routinely dismiss cases where a complaint relies on sources that controvert allegations about the falsity of the omissions and representations at issue. *See*, *e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009) quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.... If the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief."); *Mallett v. Wisconsin Div. of Vocational Rehab.*, 248 F.3d 1158 (7th Cir. 2000) (same); *Boysen v. Walgreen Co.*, No. C 11-06262-SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012) (holding that plaintiff's allegations did not establish injury-in-fact in light of FDA guidance and scientific findings in judicially noticed exhibits).

4

Indeed, the court rejected an identical argument in the most on-point PFAS case decided to date, *Andrews v. Procter & Gamble Co.,* No. EDCV1900075AGSHKX, 2019 WL 6520045, at *2 (C.D. Cal. June 3, 2019), noting that courts can consider documents cited to or referenced in a complaint in deciding a Rule 12(b)(6) motion. *Id.* The *Andrews* court dismissed the case because the article cited in the complaint was inconsistent with the complaint's allegations. Like here, the article reported testing on the product only for fluorine (not particular PFAS) and did not present evidence of consumer exposure to PFAS from the product at issue. *Id.* at *3.

Plaintiff cites to *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 846 (N.D. Cal. 2018), for the proposition that dismissal would "conflate the question of whether Plaintiffs have standing with the question of whether Plaintiffs' claims have merit." Opp. at 3, 7, 14. But in *Zeiger*, where the plaintiffs alleged misrepresentations on dog food based on "levels of arsenic and lead," the court declined to adopt the reasoning of other cases that considered extrinsic materials from FDA on the grounds that FDA "has not promulgated guidelines with respect to safe or acceptable levels of arsenic and lead in dog foods." *Id.* at 842, 846. Here, FDA not only has guidance on PFAS, it has specifically approved some fluorinated substances to be used as food contact materials.

Plaintiffs also argue the sources cited in the Complaint are not inconsistent with its allegations. Opp. at 9-10. But they ignore the citations discussed at length in McDonald's Motion. *See* Mot. at 4-5, 9. For example, paragraphs 2, 3, 53, and 55 of the Complaint state or imply that PFAS as a group are harmful, relying on specific materials to support the allegations. Yet, those cited materials do not support the premise. *See* Mot. at 4. Rather, the cited articles (Compl. ¶¶ 44-45) contain no data indicating that all PFAS as a group are harmful, that any specific PFAS are present in any McDonald's packaging, or that any PFAS migrated to McDonald's food (or any food). *See* Mot. at 3. Plaintiffs do not address these glaring inconsistencies.

5

Finally, Plaintiffs take issue with Mr. Van Breda's declaration, arguing that it simply creates an issue of fact. But it is addressed to McDonald's Rule 12(b)(1) challenge and confirms that when a fluorinated substance is used in McDonald's packaging, manufacturers "only intentionally add organic fluorine substances that have been pre-approved by the FDA for those particular uses." Van Breda Decl. ¶ 7. This provides a reasonable explanation that is in fact consistent with a finding of "organic fluorine" identified by the Consumer Reports and Toxic Free Future articles, and underscores the implausibility of Plaintiffs' efforts to plead otherwise.

### C.     Plaintiffs Fail to Plead a Concrete Economic Injury.

Plaintiffs' reliance on *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011), to support standing is similarly misplaced. There, a children's product that looked like candy was swallowed by children and caused substantial physical injury, leading to a product recall. *Id*. at 750. The named plaintiffs in the suit, however, were not physically injured, because their children had not swallowed the product. *Id*. The court nevertheless agreed that they had standing because they would have paid less (or nothing) for the product had they known of the risks of physical injury. *Id.* at 751. Simply, the plaintiffs alleged that they could not have safely continued to use the product given the risk of injury based on concrete harm to other children from the product. It was not whether there were ingredients that may or may not have been in the particular products purchased and consumed by plaintiffs, or that may or may not have been potentially harmful.

Conversely, here, Plaintiffs do not allege that the packaging material itself poses any risk of injury. Plaintiffs have pled no plausible risk of physical injury if they continue to use the products, or that anyone has actually been physically injured from ingesting the food in the packaging at issue. This is unlike *Aqua Dots* where several children had fallen into comas from ingesting the product, and plaintiffs were clearly deprived of continued use of the products.

Plaintiffs' other citations are similarly inapposite. In *Willard v. Tropicana Mfg. Co., Inc.*, "100% juice" label claims were at issue, when the products allegedly contained artificial ingredients. 577 F. Supp. 3d 814, 820 (N.D. Ill. 2021). Here, there are no misleading label claims incorporated into the benefit of the bargain, as discussed *infra*. *See McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 703 (9th Cir. 2020) (finding no standing because plaintiff did not identify any misleading statement on the product label, and therefore his unreasonable expectations about the product were not incorporated into the bargain). Likewise, *Leslie v. Medline Indus., Inc.*, concerns air exposures to a toxic chemical, No. 20-CV-01654, 2021 WL 4477923, at *6 (N.D. Ill. Sept. 30, 2021), but here there is no allegation that Plaintiffs were actually exposed to any particular PFAS or that PFAS were found in the food. Finally, *Barnes v. Unilever United States Inc.*, is not on point because the plaintiffs there identified a specific substance at issue in the antiperspirant products (benzene) and alleged that the products were adulterated. No. 21 C 6191 MFK, 2022 WL 2915629, at *1 (N.D. Ill. July 24, 2022). That stands in stark contrast to this case, where Plaintiffs neither identify any specific substance they were exposed to, nor allege that the "organic fluorine" detected in the packaging migrated to the foods, much less caused the foods to be adulterated.

## III. THE COMPLAINT DOES NOT SATISFY RULE 9(b).

Addressing Rule 9(b), Plaintiffs try in vain to distinguish *Andrews*, but it is directly on point. Like Plaintiffs here, Andrews tried to support allegations that products contained harmful PFAS with a study that made three central but unconnected conclusions: (1) the dental floss contained elevated levels of fluoride; (2) elevated levels of fluoride *could* indicate PFAS; and (3) some PFAS could be harmful. 2019 WL 6520045, at *3. But the court appropriately recognized that the testing in the study "doesn't adequately support this allegation," and dismissed the claim under Rule 9(b). *Id.* Here, Plaintiffs' core allegations are no different than Andrews' and should meet the same fate.

Plaintiffs rely heavily on a Consumer Reports article to allege that "harmful PFAS" exist in McDonald's packaging, but Consumer Reports is more careful than Plaintiffs in its conclusions. The article acknowledges that "[t]here are more than 9,000 known PFAS," including those that are widely used in consumer products. RJN, Ex. G. And critically—despite what Plaintiffs allege without underlying support—Consumer Reports *does not* differentiate between innocuous PFAS and allegedly harmful PFAS. Instead—like the study in *Andrews*—it makes two unconnected claims: that some PFAS (but not others) are alleged to be harmful, and that a measure of organic fluorine could (but does not necessarily) indicate the existence of PFAS. *Id.* The exact same is true for the Toxic Free Future article. RJN, Ex. F (stating that "total fluorine" testing on various products "may" indicate the existence of PFAS, without specifying whether any specific PFAS chemicals were found or that they were harmful). The same is true for Plaintiffs' own testing (Compl. ¶ 6) which Plaintiffs admit only tested for organic fluorine in one product—a Big Mac box. Thus, these studies cannot meet the specificity required by Rule 9(b), especially where their results are consistent with the presence of FDA-approved materials. (Indeed, even under the more forgiving Rule 8 standard, the court in *GMO Free USA* found that because "different PFAS have potentially different health effects" and some PFAS have "not been found to be toxic or environmentally unsafe . . . the possibility that other PFAS chemicals may be found in defendants' products does not warrant denial of defendants' motion . . . ." RJN, Ex. N at 5.)

For its part, the 2019 study, which Plaintiffs allege purports to find specific PFAS in a French fry box (*Id.* ¶ 4), does not salvage their claims. Critically, the objective of the 2019 study was only to evaluate the reliability and feasibility of PFAS testing methods, not to address whether certain PFAS are harmful or can migrate to food. RJN, Ex. H at 73. Consistent with those objectives, the 2019 study does not provide any information about the packaging it tests because

8

it is not relevant to the study's objective. *Id*. at 74. It did not test the packaging identified in the Consumer Reports or Toxic Free Future articles (the Big Mac container or French Fries bag), and it is missing critical details about the samples tested, e.g., whether the tested material was sourced from the United States (where FDA rules apply) or elsewhere, when the samples were purchased, which part of the box was tested (the outside or the food contact surface), and whether trace level substances are consistent with FDA-approved fluorinated substances. *Id*.

Because these third party reports cannot support the heightened pleading requirements of Rule 9(b), Plaintiffs attempt to (1) "analogize" their hollow pleadings with cases that did in fact plead their claims with greater particularity; and (2) argue unsuccessfully for a lower pleading standard. Plaintiffs' attempts fail. First, Plaintiffs are mistaken that McDonald's challenges the merits. Opp. at 14-15. Not only has the *Andrews* court considered and rejected this argument, but courts readily allow similar challenges. *See Housey v. Procter & Gamble Co.*, No. 21 CIV. 2286 (NRB), 2022 WL 874731, at *6 (S.D.N.Y. Mar. 24, 2022) ("Where a plaintiff has chosen to use scientific evidence to state her claims, and that evidence does not support her claims, plaintiff has not plausibly pled her claims."); *Spector v. Mondelez Int'l, Inc.*, No. 15 C 4298, 2017 WL 4283711, at *5 (N.D. Ill. Sept. 27, 2017). Plaintiffs cannot rely on their own characterizations of cited studies when those studies do not support Plaintiffs' contentions.

Second, Plaintiffs' efforts to latch onto other well-pleaded complaints only demonstrate the wide gap separating their Complaint from those that passed muster. Plaintiffs claim that *Dawood v. Gamer Advantage* is an "analogous case" holding that allegations concerning PFAS meet Rule 9(b). Opp. at 15. Not so. The *Dawood* complaint lays out detailed and specific testing conducted on the exact FogAway products at issue in the case, identifies two specific PFAS compounds in those products—flurotelomer alcohols (FTOHs) and flurotelomer ethoxylates

(FTEOs)—and connects each of those compounds to allegedly toxic PFAS. Supp. RJN, Ex. Q ¶¶ 21-28. Dawood credibly alleged exposure to particular PFAS, because FogAway directed users to spray the product directly onto their face while wearing glasses. *Id.* ¶ 6. The underlying support for Dawood's allegations is specific and directly linked to the product at issue. *Dawood*, 2022 WL 3108846 at *4 (complaint "sufficiently pleads why and how the defendant's representations about FogAway are false by alleging the findings from the study done on FogAway"). Plaintiffs' allegations here—which fail to allege the existence of PFAS in the Products generally and specifically—do not even come close to the specificity of those in *Dawood*.

Finally, Plaintiffs argue that their claims sounding in omission are subject to a lower pleading standard. Opp. at 14 (citing *Waldo v. Eli Lilly & Co.*, No. CIV. S-13-0789 LKK, 2014 WL 130545, at *1 (E.D. Cal. Jan. 14, 2014)). But in the cited case, the plaintiff pleaded a concrete injury—that she used the product until she discovered she was pregnant; her child was born with heart defects; and studies showed a causal connection to the product at issue. 2014 WL 130545, at *1. The plaintiff satisfied Rule 9(b) because she provided sufficient evidence linking the product to her child's heart defects, not because some lesser pleading standard applies. And Plaintiffs' argument for a lower pleading standard was rejected by the *Andrews* court. *Andrews*, 2019 WL 6520045 at *3 ("Plaintiff also argues that the particularity requirement of Rule 9(b) should be 'relaxed' here since Plaintiff's false advertising claims are based on fraudulent omissions instead of affirmative misrepresentations [but] Plaintiff cites no controlling authority for this argument."). Critically, the *Andrews* court makes clear that "even if a relaxed standard applied, Rule 9(b) still requires that Plaintiff's claims be pled with more detail than what Plaintiff provides here." *Id.*

## IV.   BECAUSE PLAINTIFFS CANNOT IDENTIFY AN ACTIONABLE STATEMENT, THEIR CLAIMS FAIL THE REASONABLE CONSUMER TEST.

The Opposition backs away from reliance on McDonald's general online statements about safety and sustainability as a basis for Plaintiffs' claims, and does not contest that these statements, unconnected to any product, are legally insufficient to support a claim. Plaintiffs are correct— these statements are not actionable, as the only case they cite relative to this point plainly holds. Opp. at 20-21. Other than these online assertions, Plaintiffs identify only statements in one location of a single iteration of McDonald's packaging—the inside panel of a Big Mac container that does not mention PFAS or anything about the content of the container—as potentially misleading. Compl. ¶ 10. Plaintiffs do not provide any information about fry packaging in their Complaint— in fact, they do not describe the packaging in any way, much less identify any particular representation. *See* Opp. at 16-18. Thus, Plaintiffs have plainly failed to identify any packaging representation on any other packaging, and therefore they have failed to state a claim against other products and have patently not met Rule 9(b) with respect to those items.

As to the Big Mac container, Plaintiffs fail to respond to the key argument that the Forest Stewardship Council ("FSC") and 37% post-consumer recycled content claims—which relate only to sources of the paper in the carton—do not imply that the packaging is free of PFAS or anything else. Mot. at 19-20. Instead, Plaintiffs repeat that consumers will somehow construe such claims to mean the finished product is "PFAS free," citing only to *Zeiger*. But *Zeiger* discusses "natural" and "pure" claims for a finished product as inconsistent with the presence of an allegedly harmful chemical. Opp. at 20. This is very different than the situation here, where the FSC and post-consumer recycled statements literally have no bearing on the presence of organic fluorine or PFAS, and merely provide general information about how the packaging materials are sourced.

Indeed, Plaintiffs nowhere allege that either statement on the packaging is untrue or inconsistent with the use of FDA approved fluorinated substances.

Without a plausible misrepresentation, Plaintiffs retreat to an equally-flawed omission theory: that McDonald's failed to affirmatively disclose the presence of harmful PFAS in its packaging. Opp. at 18. But Plaintiffs are unable to credibly allege that any specific, or potentially harmful, PFAS are even present in the packaging, much less that such PFAS require disclosure. In any event, the Complaint flatly fails to allege that the use of PFAS in food packaging is not publicly known, which is a necessary element to stating a claims for omission. *See, e.g., Dwyer v. Allbirds, Inc.*, No. 21-CV-5238-CS, 2022 WL 1136799, at *6 (S.D.N.Y. Apr. 18, 2022) (dismissing an omission claim under the GBL because of publicly available information on the allegedly omitted information); *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (same under the UCL, CLRA, and FAL); Compl. ¶ 44 (discussing 2018 study on organic fluorine in McDonald's packaging); RJN, Ex. B (FDA webpage discussing the approved use of PFAS in food packaging). Moreover, McDonald's already discloses the use of fluorinated substances, as well as its goal to eliminate PFAS from its packaging. *See* Van Breda Decl., Exs. A & B. Perhaps realizing this voids their omission theory, they back away from it, criticizing McDonald's for assuming they seek disclosure of the presence of PFAS. Opp. at 27.

Furthermore, Plaintiffs' theories of consumer deception speak more to their idiosyncratic dissatisfaction with current regulations and the packaging industry than the generally-held views of a reasonable consumer, who would not connect general statements about sustainability and safety with the absence of any PFAS, much less with the absence of specific PFAS that the FDA has approved as safe and not meriting disclosure to consumers. And cases like this—led by uniquely interested plaintiffs armed more with conclusions than underlying facts—do not speak

12

for reasonable consumers. *Gordon v. Target Corp.*, No. 7:20-cv-09589-KMK, 2022 WL 836773, at *10 (S.D.N.Y. Mar. 18, 2022) (finding that Plaintiff's "issue[s] with the Transition Formula industry as a whole . . . do not satisfy Plaintiff's burden to allege that a specific advertisement or statement by Defendant would mislead a reasonable consumer as to the Product").

## V.     PLAINTIFFS' CLAIMS ARE PREEMPTED.

Plaintiffs' claims—all of which are premised on state law—conflict with federal law and therefore merit either dismissal as preempted or a stay in deference to the FDA's primary jurisdiction. Any intentionally added PFAS in McDonald's packaging materials is FDA-approved. RJN, Ex. C (website statement); Van Breda Decl. ¶ 7 & Exs. A-B. Plaintiffs ask the Court to find mere use of such substances deceptive and unlawful, and suggest that McDonald's be required to "use PFAS alternatives." Opp. at 27. Running headlong into *Backus v. Nestle USA, Inc.*, 167 F. Supp. 3d 1068, 1071-72 (N.D. Cal. 2016), Plaintiffs simply deny that their effort to ban PFAS in McDonald's packaging conflicts with the Food, Drug, and Cosmetic Act's ("FDCA") purpose and objectives. Opp. at 23. They argue that the phasing out of a "generally recognized as safe" ("GRAS") substance (i.e., the substance would no longer be classified as GRAS as of a date certain) somehow presents *more* tension with the FDCA than the situation here. This is absurd. GRAS is a less rigorous process than the FCN process and does not even require FDA pre-approval. *See* Mot. at 22 n.11. This conflict with federal law is much more substantial than *Backus*. Moreover, Plaintiffs' claims for mandatory removal of PFAS ignore the safe harbor doctrine that "prevent[s] federal-state conflicts by protecting business practices that the federal government has specifically approved." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 486 (7th Cir. 2020).

Plaintiffs go on to raise factual issues concerning compliance with the food contact regulations, such as whether the appropriate supplier was producing the substance under the FCN. Opp. at 24. But they have not sued McDonald's for violating these requirements, claim they are

not seeking to enforce the FDCA (*Id.*), and allege no facts to overcome the presumption that McDonald's complies. *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 349-50 (9th Cir. 2014) ("[T]he burden of proving such unlawfulness rests on the party alleging illegality . . . [and] [b]oth California and federal law assume that people act lawfully unless proven otherwise."). None of this contradicts the fact that some fluorinated substances that Plaintiffs classify as PFAS are specifically approved by the FDA, following careful evaluation of safety, which undermines the entire Complaint. *See* Mot. at 21-23.

Ultimately, Plaintiffs claim to not seek disclosure of the presence of PFAS (which McDonald's already discloses), noting that they "are focused on Defendant's advertising scheme" instead. Opp. at 27. But this concession does not square with Plaintiffs' earlier arguments that, despite not identifying actionable advertising statements, they may proceed on a failure to warn claim based on omission. Plaintiffs cannot have their cake and eat it too. They are either pursuing a preempted omission theory, or their claims are limited to identified advertising.

## VI.   PLAINTIFFS' ANCILLARY CLAIMS FAIL.

Withdrawing their claims for money had and received, negligent failure to warn, and violations of the Magnuson-Moss Warranty Act,[3] Opp. at 29 n.13, Plaintiffs fail to articulate why their remaining independent claims survive, even if McDonald's arguments above are rejected. Opp. 29-30. ***First***, Plaintiffs cannot maintain their California unjust enrichment claim because it is not an independent cause of action (*Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070 (N.D. Cal. 2021)) or their similar New York claim because they fail to explain how it is not

---

[3] The Complaint does not allege a Magnuson-Moss Warranty Act claim. Perhaps Plaintiffs intended to withdraw their claim under California's similar Song-Beverly Consumer Warranty Act, which expressly excludes "consumables" that are "intended for consumption by individuals." Cal. Civ. Code §§ 1791(a), (d). That claim should be struck in any event. *See Ivie v. Kraft Foods Glob., Inc.*, No. C-12-02554-RMW, 2013 WL 685372, at *14 (N.D. Cal. Feb. 25, 2013).

duplicative of their other causes of action (*Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017)). **_Second_**, Plaintiffs' express warranty claims fail because they do not plausibly allege that McDonald's promised, as a basis of the bargain, that the packaging would not contain organic fluorine (*Brown v. Starbucks Corp.*, No. 18CV2286-JM-WVG, 2019 WL 996399, at *4 (S.D. Cal. Mar. 1, 2019)) or that the "product does not comport with the statements contained on the label" (*Wynn v. Topco Assocs., LLC*, No. 19-CV-11104-RA, 2021 WL 168541, at *7 (S.D.N.Y. Jan. 19, 2021).) **_Third_**, Plaintiffs' breach of implied warranty claims fail because they offer no evidence to suggest the packaging is not fit for its ordinary use (*Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 894–95 (C.D. Cal. 2013)) and do not allege that they were "physically injured. (*Hammock v. Nutramarks, Inc.*, 2016 WL 4761784, at *5 (S.D. Cal. Sept. 12, 2016)). *See also* Compl. ¶¶ 15, 17. **_Last_**, Plaintiffs' claims for negligent misrepresentation are barred by the economic loss rule under California law (*McKinney v. Corsair Gaming, Inc.*, No. 22-CV-00312-CRB, 2022 WL 2820097, at *11 (N.D. Cal. July 19, 2022)) and fail under New York law because they fail to plausibly allege that "Defendant's product label imparted incorrect information" or that a special relationship exists (*Wynn*, 2021 WL 168541, at *6).

## VII.   CONCLUSION

Plaintiffs do not and cannot allege the presence of a specific, harmful chemical in the food they purchased or any actual harm that has to come to anyone from eating that food. Furthermore, they have not relied on online statements by McDonald's concerning food safety or PFAS, and they cannot logically turn McDonald's label claims about the paper sources for its packaging into representations that a reasonable consumer would understand as "PFAS-free" promises. Because Plaintiffs have suffered no particularized injury, fail to plead their fraud claims with specificity, and seek to undermine the application of controlling federal law, the Court should dismiss their Complaint with prejudice.

15

Dated:  October 6, 2022          **ARNOLD & PORTER KAYE SCHOLER LLP**


By:     _/s/ Trenton H. Norris_
        Trenton H. Norris (admitted *pro hac vice*)
        Three Embarcadero Center, 10th Floor
        San Francisco, CA 94111-4024
        Telephone:  415.471.3100
        Facsimile:  415.471.3400
        Email:  trent.norris@arnoldporter.com

        Lori B. Leskin (admitted *pro hac vice*)
        250 W. 55th Street
        New York, NY 10019
        Telephone:  212.836.8000
        Facsimile:  212.836.8689
        Email:  lori.leskin@arnoldporter.com

        Cameron Davis (Bar No. 7335765)
        70 W. Madison Street, Suite 4200
        Chicago, IL 60602-4231
        Telephone:  312.583.2300
        Facsimile:  312.583.2360

        *Attorneys for Defendant*
        MCDONALD'S CORPORATION

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that the foregoing filing was served upon

counsel of record via the Court's CM/ECF electronic filing system on October 6, 2022.

*/s/ Trenton H. Norris*
Trenton H. Norris (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Tel: (415) 471-3100
Fax: (415) 471-3400
Email: trent.norris@arnoldporter.com
